STATE OF NORTH CAROLINA v. BOBBY LEWIS BLACKWELDER

No. 231A83

(Filed 27 September 1983)

### 1. Criminal Law § 138— second degree murder—heinous, atrocious, or cruel aggravating factor

The evidence showed that a second degree murder was excessively brutal and that the victim suffered unnecessary physical pain prior to death so as to support the trial judge's finding as an aggravating factor that the murder was especially heinous, atrocious, or cruel where the evidence showed that deceased suffered a shotgun wound to his back and another to his head, the second shot having literally blown the victim's brains from his skull; the first serious wound inflicted was the shotgun wound to the victim's back; although such a wound could have been fatal, it would have not caused instantaneous death, and a person of the size, weight, age and physical condition of the victim could have lived a maximum of several hours after receiving such a wound; the victim's body was discovered in the kitchen of defendant's trailer; in addition to the blood and brains scattered in the vicinity of the body, there were bloodstains found on the front porch or deck of the trailer, in the bathroom and in the hallway leading to the bathroom, indicating that the victim was wounded and bleeding and thus suffered for some time prior to the fatal shot; and the fatal shot was fired with the muzzle of the shotgun placed no more than an inch from the victim's head. G.S. 15A-1340.4(a)(1)f.

### 2. Criminal Law § 138— murder case—use of deadly weapon as aggravating factor

When the facts in a murder case justify an instruction on the inference arising as a matter of law from the use of a deadly weapon and it is in fact given, or when it could have been given had defendant not entered a plea of guilty, evidence of the use of that weapon may not be used as an aggravating factor at sentencing. G.S. 15A-1340.4(a)(1)i.

### 3. Criminal Law § 138— second degree murder—seriousness of crime as aggravating factor

In imposing a sentence for second degree murder, the trial judge erred in finding as an aggravating factor that "the presumptive sentence of fifteen years does not do justification to the seriousness of this crime," since factors such as deterrence or the seriousness of a crime were presumably considered in determining the presumptive sentence for the offense, and since the "seriousness" of a crime may be measured only in terms of specific statutory or nonstatutory aggravating or mitigating factors relating to the character or conduct of the offender, or focusing on the victim.

### 4. Criminal Law § 138— person of good character mitigating factor—insufficiency of proof

Defendant failed to prove by a preponderance of the evidence the mitigating factor that he has been a person of good character or has had a good reputation in the community in which he lives, G.S. 15A-1340.4(a)(2)m,

where his evidence showed only that he was never seen in a fight or carrying a weapon; that he paid his rent; that he borrowed money and repaid it; and that as an alcoholic he was nonviolent when drunk.

**5. Criminal Law § 138— military service as mitigating factor**

Should the evidence at defendant's resentencing establish that defendant was honorably discharged from the United States Armed Services, that factor must be found by the court in mitigation. G.S. 15A-1340.4(a)(2).

BEFORE *Freeman, J.*, at the 10 January 1983 Criminal Session of Superior Court, ROWAN County, defendant was convicted of second degree murder. Pursuant to G.S. § 7A-27(a), he appeals from a judgment sentencing him to life imprisonment. Argued 12 September 1983.

The case arises out of the 28 September 1982 shooting death of Michael Trent Tew. The body was discovered inside defendant's mobile home. When law enforcement authorities arrived at the scene of the crime, defendant was on his front porch mopping up what appeared to be blood. Inside the trailer, the officers found Tew's body and observed what appeared to be a shotgun wound to his back and another to his head, the second shot having literally blown the victim's brains from his skull. Physical evidence discovered as a result of a crime scene search, including a shotgun, shotgun shells, plastic waddings, and blood samples, connected the defendant with the murder. George Basinger, a taxi driver in Kannapolis, testified at trial that he picked up the defendant and the victim at the Driftwood Lounge on 28 September and at 6:15 p.m. dropped the two men at defendant's trailer. At the request of Mr. Tew, Basinger arranged for a second cab driver, Edward Hill, to return to defendant's trailer at 6:30 p.m. Hill testified that upon his arrival he was informed by defendant that Tew had gone. Hill was told to "just go on up the hill and don't even look back. Just keep on going." Hill later picked defendant up at the Driftwood Lounge and drove him to the Saturday Night Lounge.

Willard Howard, who alerted law enforcement authorities that the murder had occurred, testified that he met defendant at the Saturday Night Lounge at approximately 7:15 p.m. on 28 September. He accompanied defendant to defendant's trailer. Defendant had indicated to Howard that he had shot someone twice, that he had never seen anything bleed that much before,

and that the body was in the trailer. Howard left the trailer immediately after viewing what loooked like "bloody water" and a "chunk of meat" (the victim's brains) on the floor and what looked like a body covered up with sheets on one side of the kitchen.

Defendant's assignments of error pertain only to the sentencing phase of his trial. He challenges the trial court's reliance on two statutory aggravating factors: that the offense was especially heinous, atrocious, or cruel, G.S. § 15A-1340.4(a)(1)f, and that defendant was armed with or used a deadly weapon at the time of the crime, G.S. § 15A-1340.4(a)(1)i. Defendant further challenges the trial court's reliance on a non-statutory aggravating factor: "That the presumptive sentence of 15 years does not do justification to the seriousness of this crime." In addition, defendant assigns as error the trial court's failure to find in mitigation that defendant has been a person of good character or has had a good reputation in the community in which he lives, and as an additional mitigating factor defendant's service in the army. Finally defendant challenges the trial court's discretionary weighing process which resulted in a life sentence in excess of the presumptive term of fifteen years. Facts necessary to a determination of these issues will be discussed where pertinent. For the reasons set forth below, we hold that defendant is entitled to a new sentencing hearing.

*Rufus L. Edmisten, Attorney General, by Guy A. Hamlin, Assistant Attorney General, for the State.*

*Kenneth L. Eagle, Attorney for Defendant-Appellant.*

MEYER, Justice.

[1] Defendant first contends that the trial court erred in finding as a factor in aggravation that the offense was especially heinous, atrocious, or cruel. G.S. § 15A-1340.4(a)(1)f. We have addressed the applicability of this factor in the context of a manslaughter offense in *State v. Ahearn*, 307 N.C. 584, 300 S.E. 2d 689 (1983). In that case we looked, for definitional purposes only, to those capital cases where a similar factor had been applied under G.S. § 15A-2000(e)(9). We considered whether death was immediate; whether there was unusual infliction of suffering upon the victim; whether there was evidence of excessive brutality beyond that normally present in any killing; or whether the facts as a whole

portrayed the commission of a crime which was conscienceless, pitiless or unnecessarily tortuous to the victim. We held that evidence which indicated that a baby had been beaten to death, struck against a bedpost with such force that it shattered his body cast and crushed his skull, was sufficient to support a finding that the voluntary manslaughter offense was especially heinous, atrocious, or cruel. We noted that the baby's injuries were multiple and death was not immediate.

The Court of Appeals has since applied this factor in *State v. Medlin*, 62 N.C. App. 251, 302 S.E. 2d 483 (1983), and *State v. Hammonds*, 61 N.C. App. 615, 301 S.E. 2d 457 (1983) (assault with a deadly weapon with intent to kill inflicting serious injury); in *State v. Massey*, 62 N.C. App. 66, 302 S.E. 2d 262 (1983) (attempted burglary); in *State v. Abee*, 60 N.C. App. 99, 298 S.E. 2d 184 (1982), *mod. and aff'd.*, 308 N.C. 379, 302 S.E. 2d 230 (1983) (multiple sex offenses); and in *State v. Sandlin*, 61 N.C. App. 421, 300 S.E. 2d 893, *cert. den.* 308 N.C. 679 (1983) (second degree murder by strangulation). In *Medlin* and *Massey* the Court of Appeals found insufficient evidence of "excessive brutality" to support a finding that the crimes were especially heinous, atrocious, or cruel,[1] while in *Hammonds* the court found no evidence of this factor apart from evidence necessary to prove elements of the offense, *i.e.* use of deadly weapon and serious injury. In *Abee* and *Sandlin*, the Court of Appeals upheld a finding that the crimes were especially heinous, atrocious, or cruel, without discussion.

While it is instructive to turn to our capital cases for a *definition* of an especially heinous, atrocious, or cruel offense, we decline to measure the facts of those capital cases against the

1. While the Court of Appeals in *Medlin* applied the correct standard, *i.e.* whether the offense was excessively brutal beyond that normally present in any assault with a deadly weapon with intent to kill inflicting serious injury, the court ignored, to defendant's favor, that the victim was shot five times. Where proof of one act constituting an offense is sufficient to sustain a defendant's conviction, multiple acts of the same offense are relevant to the question of sentencing, including whether the offense charged was especially heinous, atrocious, or cruel. *See State v. Abee*, 308 N.C. 379, 302 S.E. 2d 230 (1983). Also relevant to the question of sentencing and properly considered under G.S. § 15A-1340.4(a)(1) is the impact of the crime on the victim. Where the physical or emotional injury is *in excess* of that normally present in the offense, multiple injuries would be an important consideration *either* as an additional factor in aggravation *or* as proof that the offense was especially heinous, atrocious, or cruel.

facts of cases decided under G.S. § 15A-1340.4(a)(1)f. Rather, the focus should be on whether the facts of the case disclose *excessive* brutality, or physical pain, psychological suffering, or dehumanizing aspects *not normally present in that offense.*

Defendant contends that the facts of the case sub judice do not support a finding that this murder was excessively brutal, or involved an unusual degree of suffering. We disagree.

An examination of the victim's body revealed two shotgun wounds, one on the left back area and the other through the top of the head, the head wound resulting in severe disfigurement. There were many small bruises on the front of both thighs, between one-sixteenth and one-eighth of an inch, circular and randomly distributed. There were also several similar bruised areas on the right forearm, but these had small cut marks one-eighth of an inch long and deep in each one. The autopsy report also noted a laceration below the victim's kneecap, possibly caused by a fall prior to death. We agree that evidence of bruises and cuts, if inflicted prior to death by the defendant, would support a conclusion that there was physical and psychological pain or torture not normally present in a murder; however, the record here is silent on how or when the victim sustained these wounds. Without regard to the evidence of these cuts and bruises, the record supports a conclusion that the murder was excessively brutal and that the victim, whose death was not immediate, suffered unnecessary physical pain prior to death. In fact, photographs taken of the crime scene bespeak of a ghoulish, bloody nightmare.

The examining pathologist determined that the first serious wound inflicted was the shotgun wound to the victim's back. His opinion was based on the amount of bleeding into the soft tissues of the armpit—bleeding that would be less likely to occur after death when the heart had stopped. The pathologist further testified that the wound could have been fatal, but would not cause instantaneous death and that a person of the size, weight, age and physical condition of the victim could have lived a maximum of several hours after receiving such a wound. The victim's body was discovered in the kitchen. In addition to the blood and brains scattered in the vicinity of the body as a direct result of a close-range shotgun blast to the head, there were bloodstains found on the front porch or deck of the trailer, in the bathroom, and in the

hallway leading to the bathroom. The clear indication is that the victim was wounded and bleeding and thus suffered for some time prior to the fatal shot. Also, we do not consider it inappropriate in any case to measure the brutality of the crime by the extent of the physical mutilation of the body of the deceased or surviving victim. In the present case there was evidence that the muzzle of the shotgun was placed no more than an inch from the head. The result was an excessively brutal murder:

> The head wound was on the very top of the head in the middle and there was an entrance hole which measured about an inch in diameter. Around the hole there were tears in the skin going off in all directions and there was some soot material on the skin surface of the back side of the hole. There was severe fracturing of the skull and most of the brain was absent. The brain could have been blown out of the skull through the large tear in the front of the face. This tear was down the right side of the front of the face and basically split the top of the face in half. The tear was from the top of the head down through the right eye and down the cheek next to the nose, not quite reaching the mouth. There were several other tears coming off that in the front of the face. The bones of the skull were shattered in many places and the entire skull cavity could be opened as wide as the head would go.

The trial judge properly found as an aggravating factor that the murder was especially heinous, atrocious, or cruel.

[2] Defendant next contends that the trial court erred in finding, as an aggravating factor, that defendant was armed with or used a deadly weapon at the time of the crime. G.S. § 15A-1340.4(a)(1)i. In support of his contention defendant relies on the language of G.S. § 15A-1340.4(a)(1) which states, in pertinent part, that "[e]vidence necessary to prove an element of the offense may not be used to prove any factor in aggravation . . . ." Thus, argues defendant, because evidence of the use of a deadly weapon was necessary to prove the malice element of the second degree murder offense, the same evidence could not be used to prove this factor in aggravation. The argument has merit.

In this case, as in virtually every case involving murder effected by the use of a deadly weapon, the trial judge instructed on the inference of malice raised by the use of a deadly weapon:

Second degree murder is the unlawful killing of a human being with malice.

Now the State of North Carolina has offered evidence which tended to show that on or about the 28th day of September, 1982, the Defendant went in a cab with the deceased, Michael Trent Tew, to the trailer owned by the Defendant and that while there, the Defendant took a shotgun which he owned and shot Mr. Tew once in the back and then in the top of the head with the shotgun, and that Mr. Tew died as a result of one or both of these gunshot wounds.

The Defendant elected not to offer evidence, but relied on the insufficiency or the weakness of the State's case.

Now I charge that for you to find the Defendant guilty of second degree murder, the State must prove two things beyond a reasonable doubt. First, that the Defendant intentionally and with malice shot Michael Trent Tew with a deadly weapon.

Intent is a mental attitude which is seldom provable by direct evidence. It must ordinarily be proven by circumstances from which it may be inferred. You arrive at the intent of a person by such reasonable deduction from circumstances proven as a reasonably prudent person would ordinarily draw therefrom.

Malice means not only hatred, ill-will or spite as it is ordinarily understood. To be sure, that is malice. But it also means that condition of mind which prompts a person to take the life of another intentionally or to intentionally inflict serious bodily harm which proximately results in his death and without just cause, excuse, or justification.

*A shotgun is a deadly weapon.*

The second thing the State must prove to you beyond a reasonable doubt is that the shooting was a proximate cause of Michael Tew's death. A proximate cause is a real cause, a cause without which Michael Tew's death would not have oc-

curred. *If the State proves beyond a reasonable doubt that the Defendant intentionally killed Michael Trent Tew with a deadly weapon or intentionally inflicted a wound upon Michael Trent Tew with a deadly weapon that proximately caused his death, the law implies first that the killing was unlawful and secondly that it was done with malice.*

(Emphasis added.)

Without launching into a full discourse on the history or the impact of the "inference of malice" instruction, *see State v. Reynolds,* 307 N.C. 184, 297 S.E. 2d 532 (1982), we are satisfied that when the facts justify the giving of this instruction, and it is in fact given, juries rely upon the use of the weapon for proof of malice. When the facts justify the giving of the instruction of the inference of malice arising as a matter of law from the use of a deadly weapon and it is in fact given, or when it could have been given had defendant not entered a plea of guilty, evidence of the use of a deadly weapon is deemed necessary to prove the element of malice for purposes of precluding its use as an aggravating factor at sentencing. We hold that when, as in the case sub judice, the facts justify an instruction on the inference of malice arising as a matter of law from the use of a deadly weapon, evidence of the use of that deadly weapon may not be used as an aggravating factor at sentencing.

We adopt this "bright-line" rule to avoid hairsplitting factual disputes necessitated by having to second-guess jury decisions as to the existence of malice.[2] Short of requiring every jury to specify upon what facts and circumstances it relied in determining the existence of malice, it is simply not possible to conclude,

2. For example, in *State v. Keaton,* 61 N.C. App. 279, 283-84, 300 S.E. 2d 471, 473 (1983), the defendant fired three shots at the victim, two of which hit him. The Court of Appeals held that "[a]s there were no facts and circumstances indicating that Hawks' death was unusually gruesome, other than the fact that he died from gunshot wounds, the necessary element of malice *must have been inferred* by the jury from the evidence that defendant intentionally shot Hawks with a gun." (Emphasis added.) *Accord, State v. Gaynor,* 61 N.C. App. 128, 300 S.E. 2d 260 (1983). Yet in *State v. Hough,* 61 N.C. App. 132, 135, 300 S.E. 2d 409, 411 (1983), the Court of Appeals wrote that "[t]he trial judge could properly infer the presence of malice from the circumstances and acts of the defendant" in that "[t]he number of shots [four] and manner of the shooting give rise to an inference of malice." Thus, concluded the court, "[d]efendant's use of the deadly weapon in this case was not necessary to prove the element of malice."

with any degree of certainty, that a jury instructed on the inference of malice would not have considered the use of a deadly weapon as evidence necessary to prove the element of malice.[3] We hold that defendant is entitled to a new sentencing hearing for error in considering this factor in aggravation of his sentence.

[3] As an additional aggravating factor, the trial judge found that "the presumptive sentence of 15 years does not do justification to the seriousness of this crime." Under the authority of *State v. Chatman*, 308 N.C. 169, 301 S.E. 2d 71 (1983), we hold that this was error, and repeat that factors such as deterrence or the seriousness of a crime were presumably considered in determining the presumptive sentence for the offense. While these factors may legitimately serve as a basis for imposing an active sentence, neither may be considered as *an additional* aggravating or mitigating factor. Rather, the "seriousness" of a crime may be measured in terms of *specific* statutory or nonstatutory aggravating or mitigating factors relating to the character or conduct of the offender, or focusing on the victim.[4] This the trial judge did in finding that the offense was especially heinous, atrocious, or cruel. In fact, upon considering evidence of the excessive brutality of the crime, including the mutilation of the body and the physical suffering of the victim, the trial judge was precluded from using these same items of evidence in finding an additional factor of "seriousness." G.S. § 15A-1340.4(a)(1).

[4] Defendant's fourth assignment of error focuses on the trial court's failure to find a statutory mitigating factor: that defendant has been a person of good character or has had a good reputation in the community in which he lives. G.S. § 15A-1340.4 (a)(2)m. Defendant contends that the trial court ignored uncon-

---

3. The fact that a defendant *pleads* guilty to second degree murder, as noted above, does not affect our decision on this issue. Where malice can be inferred from a murder perpetrated by the use of a deadly weapon, irrespective of whether defendant is convicted of or pleads to the charge, use of the deadly weapon will be deemed evidence necessary to prove the element of malice.

4. The offense may be aggravated because the defendant committed the offense while on pretrial release (the character of the defendant); because the offense was committed to avoid arrest (the conduct of the defendant); or because the offense was committed against a public official or because the victim was very young, old, or infirm (the position held by or the nature of the victim). G.S. § 15A-1340.4 (a)(1).

tradicted evidence that he was never seen in a fight or carrying a weapon; that he paid his rent; that he borrowed money and repaid it; that as an alcoholic he was argumentative and verbally abusive when drunk, but nonviolent.

We have recently stated that "[w]hen evidence in support of a particular mitigating or aggravating factor is uncontradicted, substantial, and there is no reason to doubt its credibility, to permit the sentencing judge simply to ignore it would eviscerate the Fair Sentencing Act." *State v. Jones*, 309 N.C. 214, 218, 306 S.E. 2d 451, 454 (1983). We cannot agree, however, that in the present case the trial judge *ignored* defendant's evidence. Rather, the testimony, taken in its entirety, simply failed to prove by a preponderance of the evidence the existence of this factor—that defendant has been a person of good character or has had a good reputation in the community. The failure here is on the part of the defendant in attempting to substitute the quantity of the evidence for the quality of the evidence. The fact that numerous witnesses testified that defendant paid his bills and was nonviolent when drunk does not, under any reasonable interpretation of general "good character" or "good reputation in the community in which he lives," establish the existence of this factor. To repeat —uncontradicted, quantitatively substantial, and credible evidence may simply fail to establish, by a preponderance of the evidence, any given factor in aggravation or mitigation. While evidence may not be ignored, it can be properly rejected if it fails to prove, as a matter of law, the existence of the mitigating factor.

[5] Defendant further argues that the trial court erred in failing to find his service in the army as a nonstatutory mitigating factor. We note that military service has now been appropriately included under G.S. § 15A-1340.4(a)(2) as a statutory mitigating factor. 1983 Session Law, Chapter 606, effective 1 October 1983. Should the evidence at resentencing establish that defendant was honorably discharged from the United States Armed Services, that factor must be found in mitigation. The weight to be attributed to that factor, as to any factor found in aggravation or mitigation, remains within the trial judge's sound discretion. *State v. Davis*, 58 N.C. App. 330, 293 S.E. 2d 658, *disc. rev. den.*, 306 N.C. 745 (1982). *See State v. Ahearn*, 307 N.C. 584, 300 S.E. 2d 689; *State v. Melton*, 307 N.C. 370, 298 S.E. 2d 673 (1983).

As his final assignment of error, defendant challenges the discretionary weighing process that resulted in a sentence of life imprisonment for second degree murder. As the case must be remanded for resentencing in view of error found in two aggravating factors, we again emphasize that:

> The fair sentencing act did not remove, nor did it intend to remove, all discretion from the sentencing judge. Judges still have discretion to increase or reduce sentences from the presumptive term upon findings of aggravation or mitigating factors, the weighing of which is a matter within their sound discretion. Thus, upon a finding by the preponderance of the evidence that aggravating factors outweigh mitigating factors, the question of whether to increase the sentence above the presumptive term, and if so, to what extent, remains within the trial judge's discretion.

> The discretionary task of weighing mitigating and aggravating factors is not a simple matter of mathematics. For example, three factors of one kind do not automatically and of necessity outweigh one factor of another kind. The number of factors found is only one consideration in determining which factors outweigh others. Although the court is required to consider all statutory factors to some degree, it may very properly emphasize one factor more than another in a particular case. N.C. Gen. Stat. 15A-1340.4(a). The balance struck by the trial judge will not be disturbed if there is support in the record for his determination.

*State v. Davis,* 58 N.C. App. at 333-34, 293 S.E. 2d at 661 (citations omitted). *Accord, State v. Ahearn,* 307 N.C. 584, 300 S.E. 2d 689; *State v. Melton,* 307 N.C. 370, 298 S.E. 2d 673.

The case is remanded to the Superior Court, Rowan County, for resentencing.

Remanded for resentencing.