STATE OF NORTH CAROLINA v. THOMAS ALBERT TAYLOR

No. 153A83

(Filed 3 November 1983)

1. **Criminal Law § 138— sentencing hearing—aggravating factor that defendant used deadly weapons—improper consideration**

   In a prosecution for second degree murder, the trial court incorrectly considered as an aggravating factor that defendant was armed with or used a deadly weapon during the commission of the offense since, even though defendant pled guilty to both homicides, use of the deadly weapon was necessary to prove the element of malice. G.S. 15A-1340.4(a)(1)i.

2. **Criminal Law § 138— evidence used to prove act of violence different from evidence used to prove use of deadly weapon**

   It is proper for a sentencing judge to use the existence of a deadly weapon to find both the aggravating factor that defendant was armed with or used a deadly weapon during the commission of the offense and to find the aggravating factor that a murder was committed during the course of conduct in which defendant engaged in an act of violence against another person. Evidence used to prove the act of violence against another differs from that used to prove the use of a deadly weapon in that the gravamen of the factor is not merely the use of a weapon, but that the weapon was used to commit an act of violence against someone other than the victim of the crime. G.S. 15A-1340.4(a)(1)i.

3. **Criminal Law § 138— failure to find mitigating factor of good character or reputation—no abuse of discretion**

   The sentencing court did not err in failing to find as a mitigating factor that defendant possessed good character and reputation where none of defendant's character witnesses claimed familiarity with the community where defendant lived nor his reputation in that community; where the witnesses testified, in essence, that they had never observed defendant act violently or unlawfully and that around them he was well behaved; and where all witnesses were either longtime friends or social acquaintances of defendant. The testimony was not of such quality and definiteness as to be overwhelmingly persuasive on the question of defendant's good character or good reputation in the community where he lived, and because of this and because of the

character witnesses' relationships to defendant, the credibility of the testimony was not manifest.

**4. Criminal Law § 138— limited mental capacity mitigating factor properly not found**

   The trial court properly failed to find as a mitigating factor that defendant had "limited mental capacity" at the time of the offense since defendant's evidence dealt solely with his chronic brain syndrome, a mental illness, and the trial court found that defendant suffered from a "mental condition." G.S. 15A-1340.4(a)(2)(d) and G.S. 15A-1340.4(a)(2)(e).

APPEAL by defendant from a judgment of *Judge Donald L. Smith*, entered at the 25 October 1982 Criminal Session of ANSON Superior Court imposing a life sentence. N.C. Gen. Stat. § 7A-30 (1981). Defendant's petition to bypass the Court of Appeals in a companion case in which Judge Smith imposed a sentence of fifteen years' imprisonment was allowed. *Id.* § 7A-31.

*Rufus L. Edmisten, Attorney General, by Steven F. Bryant, Assistant Attorney General, for the state.*

*H. P. Taylor, Jr., for defendant appellant.*

EXUM, Justice.

Defendant pled guilty to the second degree murder of his wife, Sara Bell Taylor, and his sister-in-law, Mary Lou Kiker. After a sentencing hearing, defendant received the presumptive term of fifteen years' imprisonment in the murder of his wife and a life sentence in the murder of Ms. Kiker. Defendant alleges numerous errors in the sentencing judge's findings in aggravation and mitigation.

The facts involved in this incident are essentially undisputed. We summarize briefly:

On 9 August 1982 at approximately 7 a.m., defendant met his estranged wife at a local diner. After discussing several items, including payment of automobile liability insurance, defendant's wife told him to bring the insurance notice to her along with money necessary to pay the premium. Later, defendant went to his sister-in-law's residence where his wife was living. He told his wife, who was outside the house at the time, that he could not find the premium notice. He then went to his house, picked up all of the mail, and returned to his wife. Without exiting his truck,

he handed his wife the mail. She threw it back through the window of the truck, saying that the insurance premium notice was not among those papers.

At that point, Taylor returned to his house, searched for and found the insurance premium notice, and proceeded back to see his wife. She came up to the truck as he approached Ms. Kiker's house. Defendant gave her the insurance premium notice. She told him that she needed money to pay the premium, and defendant got out of the truck to get the money for her from the rear compartment. At that point, she reached into the cab of the truck and picked up a pistol. Defendant looked up, saw her pointing the gun at him, and forcibly took it from her. As she began to scream and run toward the house, defendant fired the pistol. He followed his wife into Ms. Kiker's house. As defendant entered the house to look for his wife, he heard a noise behind him, turned, and fired his gun twice. These shots struck and eventually killed Ms. Kiker. His wife then ran through the house with both hands up, knocking defendant backwards. At that point, defendant shot again. His wife ran across the street to a neighbor's house, where she collapsed on the steps and died.

Defendant left and returned to his home nearby. Later that morning, the police located him there and took him into custody without incident. Defendant voluntarily confessed to both homicides.

In both cases Judge Smith found identical aggravating circumstances: defendant used a deadly weapon; each homicide was committed during a course of conduct in which defendant committed an act of violence against another person, *i.e.*, the murders, respectively, of Mary Kiker in the case in which Sara Taylor was the victim and of Sara Taylor in the case in which Mary Kiker was the victim; defendant tends "to react impulsively and violently and therefore needs restraining to protect the public." *See* N.C. Gen. Stat. § 15A-1340.4(a) & (1)(i) (1981 Cum. Supp.). In both cases Judge Smith found these identical mitigating circumstances: defendant had no prior criminal record; defendant suffered from "chronic brain syndrome," a mental condition "insufficient to constitute a defense but [which] significantly reduced his culpability for the offense"; and defendant voluntarily acknowledged his wrongdoing "at an early stage of the criminal process." *See id.*

§ 15A-1340.4(a)(2)(a), (d), & (11). In the case involving defendant's wife's murder, Judge Smith found an additional mitigating circumstance: "defendant acted under strong provocation, or the relationship between defendant and the victim was otherwise extenuating." *See id.* § 15A-1340.4(a)(2)(i).

In defendant's wife murder, Judge Smith concluded that the aggravating and mitigating factors were evenly balanced, neither outweighing the other; hence, he imposed the presumptive sentence. In defendant's sister-in-law's murder, Judge Smith concluded the aggravating factors outweighed the mitigating, and he imposed the maximum sentence permitted.

## I.

[1]   We first consider defendant's contention that the sentencing judge erred in finding in both cases, as an aggravating factor, that defendant was armed with or used a deadly weapon during the commission of the offense. N.C. Gen. Stat. § 15A-1340.4(a)(1)i. The legislature has prohibited the use of evidence necessary to prove elements of the offense in proving factors in aggravation. *Id.* § 15A-1340.4(a)(1). A *per se* rule exists in this state that, when the facts justify an inference of malice arising from the use of a deadly weapon, evidence concerning the use of that deadly weapon may not be used to support an aggravating factor at sentencing. *State v. Blackwelder,* No. 231A83, slip op. at 9-10 (filed 27 September 1983). In this case, malice can be inferred from both murders having been perpetrated by the use of a deadly weapon. Even though defendant pled guilty to both homicides, we deem use of the deadly weapon to be evidence necessary to prove the element of malice. *Id.* at 10 n. 3. Therefore, evidence of the weapon's use could not also support the deadly weapon aggravating factor. Defendant is entitled to a new sentencing hearing in both cases due to the error in finding the aggravating circumstance that he used a deadly weapon. *See State v. Ahearn,* 307 N.C. 584, 300 S.E. 2d 689 (1983).

## II.

[2]   Defendant further contends the sentencing court erred in using the same item of evidence to prove more than one aggravating factor. Specifically, defendant argues the sentencing judge improperly used the existence of a deadly weapon in find-

ing both the aggravating circumstance discussed above and the aggravating circumstance that each murder was committed during a course of conduct in which defendant engaged in an act of violence against another person. We disagree.

The legislature has prohibited not only the use of "evidence necessary to prove an element of the offense" to prove a factor in aggravation, but also the use of the "same item of evidence . . . to prove more than one factor in aggravation." N.C. Gen. Stat. § 15A-1340.4(a)(1). We hold here that finding the use of a deadly weapon as a factor aggravating the murders violated the first prohibition. Even if this finding had been properly made, the second prohibition would not, we conclude, render unavailable an additional aggravating factor that defendant used the weapon in a course of conduct involving violence against others. Although the deadly weapon is common to both factors, evidence tending to prove each factor must necessarily be different. Proof of the "deadly weapon" factor requires evidence that defendant simply "was armed with or used a deadly weapon at the time of the crime." Id. § 15A-1340.4(a)(1)(i). This factor relates to the use of a deadly weapon in the very crime for which defendant is being sentenced. If defendant also uses the deadly weapon to commit acts of violence against another person, this additional aggravating circumstance requires a different evidentiary underpinning. The gravamen of this factor is not merely the use of a weapon, but that the weapon was used to commit an act of violence against someone other than the victim of the crime. Evidence, therefore, used to prove the act of violence against another differs from that used to prove the use of a deadly weapon in the crime for which defendant is being sentenced, even if the same deadly weapon is involved in both acts.

## III.

Defendant finally contends that the sentencing court erred in failing to find certain factors in mitigation: (1) his good character or reputation; (2) his limited mental capacity at the time the offense was committed; and (3) the existence of strong provocation in the murder of his sister-in-law. We examine each of these contentions separately.

[3] Defendant offered the testimony of four character witnesses: William Burris, Booker Sturdivant, Edgar Sturdivant, and Jesse

Willoughby. Each witness testified he had known defendant approximately five years. Burris testified:

> We are good friends and were good friends. . . . I have seen
> him in all types of conditions, drunk and sober, and in cir-
> cumstances where he could have been violent. I have never
> seen him act violent. . . . [H]e is not violent . . . to my
> knowledge. He did not have a reputation for violence. And
> did not have a reputation for mistreating his wife. . . . I
> have known him to drink but he never mistreated anybody
> and never was any trouble as far as I know.

Booker Sturdivant testified:

> I hang around the pool room and I shot pool with him several
> times. I have never observed any violence on his part. . . .
> As far as I know he has always been a law-abiding citizen. I
> don't know his general character and reputation. I have
> never observed him doing anything unlawful or misbehaving
> in any way.

Edgar Strudivant testified:

> I have occasion to know him because he came up around the
> pool room and I shot pool with him. I never observed any
> acts of violence on the part of Mr. Taylor. He has always
> been a law-abiding citizen as far as I know and has behaved
> himself as far as I know he had a good character and reputa-
> tion.

Jesse Willoughby testified:

> He came around the pool room. He was always well behaved
> when he was in the pool room. . . . As far as his general
> character and reputation all I know is he was just good
> around us. That's all I know.

One mitigating circumstance listed in the Fair Sentencing Act is that "defendant has been a person of good character or has had a good reputation in the community in which he lives." N.C. Gen. Stat. § 15A-1340.4(a)(2)m (1981 Cum. Supp.). Strictly, "[c]haracter and reputation are, of course, two different things." *State v. Davis*, 291 N.C. 1, 15, 229 S.E. 2d 285, 295 (1976). "Character is what a [person] *is*; reputation is what others *say* [the person] is." 1 Brandis on North Carolina Evidence § 102 (2d

rev. ed. 1982) (hereinafter Brandis). In cases where character is relied on as evidence of a person's probable conduct or credibility as a witness, it may be proved by other witnesses only by testimony as to reputation. *Davis,* 291 N.C. at 15-16, 229 S.E. 2d at 295 (conduct); *State v. Abernathy,* 295 N.C. 147, 244 S.E. 2d 373, 385 (1978) (credibility).

When, however, character is "a direct issue in the case," 1 Brandis § 102, "evidence is much more freely admitted than where character is only collaterally involved." 1 Brandis § 113. In such cases, character may be proved, not only by reputation, but also by the opinions of witnesses who have firsthand knowledge of it and by specific good or bad acts of the person whose character is in question. *In re Rogers,* 297 N.C. 48, 253 S.E. 2d 912 (1979) (opinion evidence admitted as well as specific acts); *State v. Hopper,* 186 N.C. 405, 119 S.E. 769 (1923) (husband testified to wife's virtue). *See generally,* 1 Brandis § 113.

Under N.C. Gen. Stat. § 15A-1340.4(a)(2)m, a defendant's character and his reputation in the community where he lives are direct issues in the case for purposes of sentencing. Evidence of both, therefore, should be liberally received, not only because they are directly in issue but also because we accord more liberality in the admissibility of evidence when it is being considered by a trial judge for purposes of sentencing than when by a jury for some other purpose. *See generally, State v. Perry,* 265 N.C. 517, 144 S.E. 2d 591 (1965); *State v. Pope,* 257 N.C. 326, 126 S.E. 2d 126 (1962).

The question before us is not, however, the admissibility of the evidence regarding defendant's character and reputation; the question is whether the evidence is such as to compel the trial judge to find as a mitigating factor that defendant was a person of good character or had a good reputation in the community in which he lives. We conclude it is not. We recently held in *State v. Jones,* 309 N.C. 214, 306 S.E. 2d 451 (1983), that a defendant at a sentencing hearing under the Fair Sentencing Act bears the burden of persuasion on mitigating factors. When he argues that his evidence is such as to compel the finding of a mitigating factor,

his position is analogous to that of a party with the burden of persuasion seeking a directed verdict. He is asking the court

to conclude that 'the evidence so clearly establishes the fact in issue that no reasonable inferences to the contrary can be drawn,' and that the credibility of the evidence 'is manifest as a matter of law.'

*Id.* at 219-20, 306 S.E. 2d at 455, *quoting North Carolina National Bank v. Burnette,* 297 N.C. 524, 536-37, 256 S.E. 2d 388, 395 (1979). We held in *Jones* that "in order to give proper effect to the Fair Sentencing Act, we must find the sentencing judge in error if he fails to find a statutory factor when evidence of its existence is both uncontradicted and manifestly credible." 309 N.C. at 220, 306 S.E. 2d at 456.

Although defendant's evidence of his good character and reputation is uncontradicted, it is not manifestly credible. Except for William Burris, the other three witnesses admitted that their knowledge of defendant's character and reputation was limited. All three testified that their knowledge arose from occasions when they shot pool with defendant and observed him "around the pool room." Booker Sturdivant conceded that he did not know defendant's general character and reputation. Both Edgar Sturdivant and Jesse Willoughby further qualified their statements with phrases such as "as far as I know" and "all I know is he was just good around us." William Burris conceded that he and defendant "are good friends and were good friends."

On defendant's reputation, none of his witnesses claimed familiarity with the community where defendant lived nor with his reputation in that community. They did not testify that his reputation in that community was good. Yet the mitigating factor defined by the statute is that defendant "has had a good reputation in the community *in which he lives.*" (Emphasis supplied.) On defendant's character, the witnesses testified, in essence, that they had never observed defendant act violently or unlawfully and that around them he was well behaved. Good character, though,

> is something more than an absence of bad character. . . . Such character expresses itself, not in negatives nor in following the line of least resistance, but quite often in the will to do the unpleasant thing, if it is right, and the resolve not to do the pleasant thing if it is wrong.

*In re Applicants for License,* 191 N.C. 235, 238, 131 S.E. 661, 663 (1926). Finally, all witnesses were either longtime friends or so-

cial acquaintances of defendant. Although not necessarily detracting from their credibility, the relationship of the witnesses to defendant is a factor which the fact finder may consider in assessing the witnesses' credibility.

We do not purport to hold that the testimony would not have supported a finding by the trial court that defendant was a person of good character and good reputation in the community in which he lived. We simply have pointed to factors which on the face of it detract from its credibility. The testimony is simply not of such quality and definiteness as to be overwhelmingly persuasive on the question of defendant's good character or good reputation in the community where he lives. Because of this and because of the character witnesses' relationships to defendant, we conclude the credibility of this testimony is not manifest. Its credibility is, rather, for the trial court, who saw and observed the witnesses, to assess. It was within the trial court's prerogative to accept or reject this testimony.

[4] In support of his contention that he suffered from a limited mental capacity at the time of the offense, defendant offered the testimony of Dr. Edwin R. Harris, a clinical psychologist. Dr. Harris testified that defendant suffered from chronic brain syndrome. This condition could cause defendant to act sporadically and with some paranoia, making it difficult for him to perceive reality in a normal way. After hearing this testimony, the court found, as a factor in mitigation, that defendant suffered from a *mental condition* that was insufficient to constitute a defense but significantly reduced his culpability for the offense. *See* N.C. Gen. Stat. § 15A-1340.4(a)(2)(d). Defendant further contends that this testimony required the sentencing judge to find, as a further factor in mitigation, that defendant's "immaturity or his *limited mental capacity* at the time of commission of the offense significantly reduced his culpability for the offense." *Id.* § 15A-1340.4(a)(2)(e) (emphasis supplied). We disagree.

The two mitigating circumstances involved are different. The one which the sentencing judge found deals with a mental disease or illness, such as chronic brain syndrome, which in this case impaired defendant so as to reduce significantly his culpability. The other circumstance, which the sentencing judge did not find, concerns a defendant's "immaturity" or "limited mental capacity"

which likewise significantly reduces culpability. The phrase "limited mental capacity" is used in the sense of limited intelligence or low I.Q. Dr. Harris's testimony does not support defendant's contention that he suffered from low or limited intelligence. It dealt solely with his chronic brain syndrome, a mental illness. Accordingly, there was no evidence to support the "limited mental capacity" mitigating factor. The sentencing judge properly did not find it.

Finally, defendant contends that he acted under strong provocation from his sister-in-law. Evidence in support of this circumstance is so meager as to be almost nonexistent. The evidence of provocation or an extenuating relationship concerned defendant's wife. The sentencing judge properly found this mitigating factor in the death of defendant's wife. But in the other death, we cannot say as a matter of law that defendant carried his burden of persuasion. Therefore, the sentencing judge did not err in not finding in the death of defendant's sister-in-law that defendant acted under strong provocation.

Because of errors in the sentencing process which we have identified,[1] defendant is entitled to a new sentencing hearing. The case is remanded to the Superior Court of Anson County for a new sentencing hearing.

Remanded for a new sentencing hearing.

---

1. Since a new sentencing hearing will be required at which the court might sentence defendant differently than did Judge Smith, we need not address defendant's contention that Judge Smith erred in concluding under the circumstances here that defendant was significantly more culpable in his sister-in-law's murder than in the murder of his wife.