STATE OF NORTH CAROLINA v. PAMELA MERISSA HEIDMOUS

No. 844SC907

(Filed 2 July 1985)

**Criminal Law § 138— voluntary manslaughter—aggravating factor of malice and deadly weapon—improper**

The trial court erred when sentencing defendant for voluntary manslaughter by finding as an aggravating factor that "defendant, with malice,

intentionally shot and killed her husband with a deadly weapon to wit: a shotgun." There was evidence before the trial court that the shooting was done with malice, although the court had to determine that there was a "factual basis" that the killing was committed without malice in order to accept defendant's guilty plea; however, the judge also added that defendant "killed her husband with a deadly weapon." The State must prove an unlawful killing to convict a defendant of manslaughter and evidence of the use of a deadly weapon to shoot the victim was necessary to prove the unlawful killing. G.S. 15A-1022(c), G.S. 15A-1340.4(a)(1).

Judge PHILLIPS dissenting.

APPEAL by defendant from *Stevens, Judge.* Judgment entered 17 April 1984 in Superior Court, ONSLOW County. Heard in the Court of Appeals 14 March 1985.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Sarah C. Young for the State.*

*Ellis, Hooper, Warlick, Waters & Morgan by Charles H. Henry, Jr., for defendant appellant.*

COZORT, Judge.

Pamela Merissa Heidmous shot and killed her husband and pled guilty to voluntary manslaughter. She was sentenced to the statutory maximum of twenty years' imprisonment. The only issue presented for our review concerns whether the trial court erred in finding the factor in aggravation that the defendant, with malice, intentionally shot and killed her husband with a deadly weapon. We hold the trial court erred in finding this aggravating factor. The facts necessary for an understanding of this case follow.

At approximately 10:52 p.m. on 12 May 1983, the defendant telephoned the Onslow County Sheriff's Department and stated that she had shot her husband. The defendant told Officer Harry Pugliese that she and her husband had been fighting and that her husband had hit her. She further stated that she did not know the gun was loaded and that it had fired accidentally. The defendant, however, later recanted this statement and admitted to a friend that she had in fact loaded the shotgun.

The victim was found in his bed lying on his back with his right hand resting behind his head, a position he was known to

have slept in during his life. According to Officer Pugliese, the victim was wearing underwear and had the bedcovers pulled up to his waist. The Onslow County Medical Examiner observed that the victim had a gaping wound beginning in his chest and extending all the way up through the lower part of his chin. An exit wound was found in the back of his head with an entrance wound in the right hand.

R. Z. Zynkavich, an S.B.I. agent, examined the .12 gauge shotgun involved in the manslaughter and determined that the weapon would not misfire or fire accidentally, even if cocked and dropped or thrown against other objects. According to Zynkavich, although the safety on the shotgun was defective, the gun would not fire unless it was loaded, cocked, and the trigger pulled, applying 5½ to 6½ pounds of pressure.

The evidence further showed that at the time of the shooting the defendant and the victim were experiencing marital difficulties. The State offered evidence that the defendant "was running around with . . . a person that she worked with." Evidence was also presented that the defendant suffered from "battered wife syndrome," meaning that even though David Heidmous physically abused her periodically she remained in the marriage because she depended on him as her sole source of approval, support, and security.

The defendant's evidence at the sentencing hearing indicated that on 12 May 1983 her husband returned home around 10:30 p.m. They began to argue. She followed her husband into the bedroom and sat down on the side of the bed to talk to him. At that point David slapped the defendant across the face, cutting the inside of her mouth and bruising her face. He then grabbed her and began to punch her repeatedly. David finally knocked her off the bed where the defendant struck her head against the bureau. David exclaimed that he was going to kill her. This assault resulted in various abrasions and bruises to the defendant's head, neck, back, knee, and shins. Chief Detective Douglas Freeman observed these injuries when he arrived at the scene later that evening.

In a semi-conscious state, which resulted from the blow to her head, the defendant got up and reached for the shotgun which David kept on a nearby shelf. The defendant quickly opened the

bolt and immediately loaded the shotgun with a shell also on the shelf. With the shotgun in hand, the defendant started moving away from David who was taunting her. As she stepped away, she lost her balance due to some clutter on the floor, and as she fell backwards, the gun discharged, striking and killing David. The defendant immediately went to the telephone and called for help.

The defendant's sole assignment of error concerns whether the trial court erred in finding the following aggravating factor: "Defendant, with malice, intentionally shot and killed her husband with a deadly weapon to wit: a shotgun." In the present case, the State agreed not to try the defendant for murder in exchange for the defendant's plea of guilty to voluntary manslaughter. Voluntary manslaughter has been defined as "the unlawful killing of a human being without malice, express or implied, and without premeditation and deliberation." *State v. Brown*, 64 N.C. App. 578, 579, 307 S.E. 2d 831, 832 (1983).

The defendant questions in particular whether there was sufficient evidence presented to support a finding that the killing was committed with malice. Although the trial court had to determine that there was a "factual basis" that the killing was committed without malice in order to accept the defendant's guilty plea, there was other evidence before the court that the shooting was done with malice. *See* G.S. 15A-1022(c). For example: the defendant had been physically abused repeatedly by the victim; she was seeing a man other than her husband; she admitted loading the shotgun; the victim was found in bed in a known sleeping position; the gun would not fire accidentally; the gun required trigger pressure of 5½ to 6½ pounds to be fired; and the defendant fired one shot which hit the victim in the chest.

Furthermore, malice can be inferred from the fact that the defendant used a deadly weapon to accomplish the killing. *State v. Taylor*, 309 N.C. 570, 308 S.E. 2d 302 (1983). Since "malice" is not an element of voluntary manslaughter, this portion of the aggravating factor does not violate the G.S. 15A-1340.4(a)(1) principle that evidence necessary to prove an element of the offense cannot be used to support a factor in aggravation. By way of analogy, we find support for this contention in *State v. Melton*, 307 N.C. 370, 298 S.E. 2d 673 (1983), where the Supreme Court

held that the defendant's sentence for second-degree murder could be aggravated by a finding that the defendant premeditated and deliberated the killing.

Standing alone, an aggravating factor proved by a preponderance of the evidence that the defendant committed the shooting with malice would have been proper. However, the judge in the present case also added that the defendant "killed her husband with a deadly weapon." In effect, it appears that Judge Stevens found two aggravating circumstances in one factor.

In *State v. Green*, 62 N.C. App. 1, 301 S.E. 2d 920, *modified on other grounds and affirmed*, 309 N.C. 623, 308 S.E. 2d 326 (1983), the defendant was tried for second-degree murder and convicted of manslaughter. The Court of Appeals considered whether the "use of a deadly weapon to shoot a victim, and thereby accomplish an unlawful killing, may properly be considered as a factor in aggravation in manslaughter cases." *Id.* at 3-4, 301 S.E. 2d at 921. To convict a defendant of manslaughter, the State must prove an unlawful killing. Our Court therefore reasoned that since evidence of the use of a deadly weapon to shoot the victim was necessary to prove the unlawful killing, this factor could not be used to aggravate the defendant's sentence.

Although in *Green*, the judge had found the statutory aggravating factor, G.S. 15A-1340.4(a)(1)(i), that "[t]he defendant was armed with or used a deadly weapon at the time of the crime," we find the *Green* court's rationale equally persuasive in the present case where the court added the factor in question as an additional non-statutory aggravating factor. Even in light of the fact that the General Assembly specifically prescribed this factor for consideration, the *Green* court stated: "We do not believe, however, that it intended this factor to be used to enhance sentences in cases where the offense itself is an unlawful killing accomplished by shooting the victim with a deadly weapon." *Id.* at 4, 301 S.E. 2d at 922. *See also State v. Rivers*, 64 N.C. App. 554, 307 S.E. 2d 588 (1983); *see generally State v. Blackwelder*, 309 N.C. 410, 306 S.E. 2d 783 (1983). We agree and apply this principle to this non-statutory aggravating factor of the same import.

Most probably, Judge Stevens did not intend to find a "deadly weapon" aggravating factor, but only intended to aggravate the defendant's sentence on a finding of "malice." However, we

are not in a position to second guess the meaning of an obviously ambiguous aggravating factor. Because it appears that the court erred in finding the aggravating factor that the defendant killed her husband with a deadly weapon, we hold the case must be remanded for resentencing. It is clear that in every case in which it is found that the trial judge erred in findings in aggravation and imposed a sentence beyond the presumptive term, the case must be remanded for a new sentencing hearing. *State v. Ahearn*, 307 N.C. 584, 300 S.E. 2d 689 (1983).

Remanded for resentencing.

Judge ARNOLD concurs.

Judge PHILLIPS dissents.

Judge PHILLIPS dissenting.

I dissent. I believe that the aggravating factor that the judge found and that he intended to find was not that the defendant used a deadly weapon, but that she acted maliciously and intentionally in killing the victim, and would affirm.