STATE OF NORTH CAROLINA v. STEVEN VAN HIGSON

No. 482A83

(Filed 6 March 1984)

1. **Criminal Law § 138— aggravating factor of especially heinous, atrocious, or cruel—improperly considered**

In prosecutions for second degree murder and assault with a deadly weapon with intent to kill inflicting serious injury, the trial court erred in considering as an aggravating factor at the sentencing phase that the offenses were especially heinous, atrocious, or cruel. The record disclosed in the stabbing death that the victim was stabbed in the heart and died "that very same day." Nor does the assault on the other victim disclose excessive brutality, pain, or psychological suffering not normally present in that offense since the defendant stabbed the victim once in the abdomen, an act sufficient to warrant punishment for the crime with which he was charged. In the absence of evidence to the contrary, whatever physical pain the victim suffered was incident to the crime.

2. **Criminal Law § 138— duplicity in aggravating factors—improper**

The trial court's findings in aggravation that (1) the defendant was an extremely dangerous mentally abnormal person, and (2) the defendant's conduct during the crimes indicated a serious threat of violence were predicated upon the same fact that the defendant is mentally ill, and therefore violated the prohibition found in G.S. 15A-1340.4(a) that "the same item of evidence may not be used to prove more than one factor in aggravation."

3. **Criminal Law § 138— aggravating factor that defendant's conduct indicated a serious threat of violence—improperly considered**

In prosecutions for second degree murder and assault with a deadly weapon with intent to kill, the trial court improperly considered as an aggravating factor that "defendant's conduct during the crimes indicate[d] a serious threat of violence" since the crimes with which defendant was charged, by definition, are crimes of violence, and presumably the threat of violence inherent in these crimes was considered in determining the presumptive sentences for the offenses.

4. **Criminal Law § 138— aggravating factors that victims did not contribute to situation and victims had no ability to defend themselves—improperly considered**

In prosecutions for second degree murder and assault with a deadly weapon with intent to kill, the trial court erred in finding as factors in aggravation that (1) neither the deceased nor the victim contributed "to the situation wherein the deceased's life was taken or the victim was wounded"; and (2) the defendant attacked the victims without warning whereby the victims had no ability to defend themselves since inherent in most crimes is an unprovoked, uninvited and unwarranted attack on an unprepared, innocent victim and since neither victim could demonstrate a particular vulnerability.

**5. Criminal Law § 138 — aggravating factor that there is no suitable or reliable supervision available for defendant's condition — improperly considered**

In prosecutions for second degree murder and assault with a deadly weapon with intent to kill, the trial court erred in considering as an aggravating factor that there was no suitable or reliable supervision available for defendant's mental condition since the fact that there appeared to be no alternative to a lengthy incarceration for this defendant was neither relevant to the injury the offense had caused nor did it relate to the particular culpability of the offender. Alternatives to incarceration are a matter for legislative inquiry. G.S. 15A-1340.3; G.S. 15A-1340.4(a).

**6. Criminal Law § 138 — failure to make separate findings in aggravation or mitigation as to each offense error**

In prosecutions for second degree murder and assault with a deadly weapon with intent to kill, the trial judge erred in failing to make separate findings in aggravation and mitigation as to each offense.

Justice MITCHELL concurring in the result and dissenting in part.

Justice MARTIN joins in this opinion.

BEFORE *Llewellyn, J.,* at the 11 April 1983 Criminal Session of Superior Court, PITT County, following pleas of guilty to charges of second degree murder and assault with a deadly weapon with intent to kill inflicting serious injury, defendant was sentenced on a consolidated judgment to a term of life imprisonment. Defendant appealed as of right on the life sentence for second degree murder pursuant to Rule 4(d) of the N.C. Rules of Appellate Procedure. We allowed defendant's Motion to Bypass the Court of Appeals on the assault conviction on 5 October 1983. Heard in the Supreme Court 16 February 1983.

Defendant brings forward six assignments of error, all of which challenge the trial court's application of the statutory provisions of G.S. § 15A-1340.4, the Fair Sentencing Act. Because of errors in the application of certain aggravating factors to defendant's case, defendant is entitled to a new sentencing hearing.

*Rufus L. Edmisten, Attorney General, by Ann Reed, Special Deputy Attorney General, for the State.*

*Donald C. Hicks, III, Public Defender, Attorney for defendant-appellant.*

MEYER, Justice.

Defendant pled guilty to the second degree murder of his brother, James Earl Higson, and to the assault of his sister-in-law, Patricia Stocks Higson. At the sentencing hearing the trial judge was apprised of the following facts in connection with the crimes: On 28 February 1982, James and Patricia Higson and their son David were returning to Greenville from Belhaven when they decided to stop by the home of James Higson's parents. Upon inquiry, Patricia Higson discovered that only the defendant, who lived with his parents, was at home. Patricia Higson notified her husband of his parents' absence and then returned to the house to inform the defendant that the family would not stay to visit.

As Patricia Higson returned to the car, she was accompanied by the defendant who then opened the door on the driver's side of the car where James Higson was seated and began to "curse at him." Both Patricia Higson and her son David saw the defendant pull a knife from his boot. A struggle ensued. Patricia Higson testified that:

> When Steve [the defendant] came up with the knife, my husband was sitting in the car. He tried to get up, but he couldn't get up because of the steering wheel. It was a small car. My husband was struggling with him only with his hands. Steve stabbed right in the heart. That was inside the car.
>
> I got out of the car and picked up a bottle that was in the back seat on the floor. I went around to the other side of the car to try to get him off of my husband. I hit him over the head with the bottle three times before the bottle broke on his temple. While I was striking Steve, he was still struggling — he was killing my husband. I guess he finally felt the bottle when it broke and then he grabbed me.
>
> He wouldn't turn me loose and said he was going to kill me. He stabbed me in my stomach and my lower intestines were hanging out. He stabbed me once with that same butcher knife.

Anticipating that "there was going to be trouble," David Higson, who was sitting in the back seat of the car, ran into the

house to find a shotgun which he had loaned his grandmother "for protection." David Higson testified that when he got back outside

> I saw my father out of the car fighting with Steve. I fired one shot up in the air to see if that would get Steve to stop, but it didn't. I saw Steve push my father against the door and then he ran to the front of the car.

> He then grabbed my mother. I saw him stab her once. Then he got up and I shot him. My mother was at the back of the car when I saw Steve stab her. I couldn't tell you where he stabbed her. When he raised up, I tried to get in a good shot. I shot him, but there weren't but two shells in the gun. The first one was a warning shot and I didn't have but one left.

> He came at me after I shot him. I ran back up to the railroad track and he tried to get me. When he got to the railroad tracks, he fell down. I ran across the road to a restaurant and told the cashier that she should call the Police Department and an ambulance.

At the sentencing hearing the testimony of relatives, friends and local law enforcement officers, in addition to the testimony of a clinical psychologist and a psychiatrist, indicated quite clearly that the defendant had serious mental and emotional problems. He had been a patient at the Pitt County Mental Health Center in 1976 and was seen again in 1979 when an examination was made to determine the necessity for involuntary commitment. At this time there was a tentative diagnosis made of paranoid schizophrenia with findings of "delusions, auditory hallucinations, paranoid idealation and loose associations." Despite these findings, defendant was never committed. A discharge summary from Central Prison Hospital dated 26 May 1982 contained the following entry: "Inmate is obviously mentally disturbed, in other words, schizophrenic." Under the diagnoses listed in the report appeared "schizophrenia with history of violence."

Dr. Charles E. Smith, the testifying psychiatrist, stated:

> I very strongly recommend and emphasize that Mr. Higson needs to continue under psychiatric care and management indefinitely. As I told you earlier, we don't know the cure for the condition. So, I think the best way to visualize

this condition is as one that requires continued indefinite care. By this I mean that he needs to be seen regularly by someone who is skilled in the handling of this type of disorder, who can kind of keep tabs on what his condition is. Hopefully, this would be to regulate such medication as might be beneficial and also to take advantage of other opportunities for improving his condition as they may arise.

Based upon my examination of Mr. Higson and based upon my prior professional experience, I would not have any recommendation to the Court with regard to the conditions of the sentence. I would certainly urge that Mr. Higson be identified, or continued to be identified, as a person with a chronic mental disorder which needs continuing care. We emphasize the need for these care needs to be met.

Following the presentation of this evidence, the trial judge found as a statutory aggravating factor that the offense was especially heinous, atrocious, or cruel. Also found were the following additional nonstatutory findings of factors in aggravation:

a. The defendant is an extremely dangerous abnormal person.

b. The defendant's conduct during this crime indicates a serious threat of violence.

c. The deceased nor the victim of the assault did not in any way contribute to the situation wherein the deceased's life was taken or the victim was wounded.

d. The defendant attacked the deceased and the assault victim without warning and at a moment when the deceased had no ability to defend himself or herself.

e. There is no suitable or reliable supervision for the defendant's condition.

As factors in mitigation, the trial judge found that the defendant had no record of criminal convictions; that the defendant was suffering from a mental or physical condition that was insufficient to constitute a defense but significantly reduced his culpability for the offense; and that prior to arrest or at an early stage of the criminal process, the defendant voluntarily acknowledged wrongdoing in connection with the offense to a law

enforcement officer. The trial judge further found that the factors in aggravation outweighed the factors in mitigation.

Based on these findings, the trial judge, having consolidated the offenses for purposes of judgment, sentenced the defendant to life imprisonment.

[1] Defendant first contends that the trial judge erred in finding as an aggravating factor that these offenses were especially heinous, atrocious, or cruel. We agree.

In *State v. Blackwelder*, 309 N.C. 410, 414, 306 S.E. 2d 783, 786 (1983), we stated that in determining the appropriateness of this factor under the Fair Sentencing Act, "the focus should be on whether the facts of the case disclose *excessive* brutality, or physical pain, psychological suffering, or dehumanizing aspects *not normally present in that offense.*" In the case sub judice, the facts surrounding the stabbing death of James Higson do not meet this test. The record discloses only that following a brief struggle, the victim was stabbed in the heart and died "that very same day." Nor do we agree that the assault on Mrs. Higson discloses excessive brutality, pain, or psychological suffering not normally present in that offense. The defendant stabbed Mrs. Higson once in the abdomen, an act sufficient to warrant punishment for assault with a deadly weapon with intent to kill inflicting serious injury. In the absence of evidence to the contrary, whatever physical pain she suffered was incident to the crime. The stabbing was not excessively brutal. There was no testimony that the victim was subjected to excessive psychological or physical suffering.

[2] Defendant next challenges the trial court's additional non-statutory findings in aggravation that (1) the defendant is an extremely dangerous mentally abnormal person, and (2) the defendant's conduct during the crimes indicates a serious threat of violence. Defendant contends that these two findings "are predicated upon the same fact that the defendant is mentally ill" and therefore violate the prohibition found in G.S. § 15A-1340.4(a) that "the same item of evidence may not be used to prove more than one factor in aggravation." We agree that these two factors are duplicitous and both are proved by the same evidence. The seemingly unprovoked attack on his brother and sister-in-law were merely manifestations of the defendant's dangerous propensities

—propensities which were obviously the result of his being "an extremely dangerous mentally abnormal person."

[3]  Defendant further contends that the evidence does not support a finding of either of these factors. With respect to the finding that the defendant is an extremely dangerous mentally abnormal person, we disagree. The evidence of record amply supports this finding. Defendant's long history of mental disorder, coupled with the testimony of the expert witnesses at trial and the violent attack on his family members, sufficiently demonstrates his dangerousness to others. The trial judge properly found this factor in aggravation. *See State v. Ahearn*, 307 N.C. 584, 300 S.E. 2d 689 (1983). We do not agree, however, that under the facts of this case it is relevant to consider as a separate aggravating factor that "defendant's conduct during the crimes indicates a serious threat of violence." Here, the defendant pled guilty to second degree murder and to assault with a deadly weapon with intent to kill inflicting serious injury. Both crimes, by definition, are crimes of violence. Presumably the threat of violence inherent in these crimes was considered in determining the presumptive sentences for the offenses. *See State v. Black-welder*, 309 N.C. 410, 306 S.E. 2d 783; *State v. Chatman*, 308 N.C. 169, 301 S.E. 2d 71 (1983).

[4]  Defendant's third assignment of error challenges the trial court's additional written findings of factors in aggravation that (1) neither the deceased nor the victim contributed "to the situation wherein the deceased's life was taken or the victim was wounded"; and (2) the defendant attacked the victims without warning whereby the victims had no ability to defend themselves. This assignment of error, too, has merit.

Inherent in most crimes is an unprovoked, uninvited and unwarranted attack on an unprepared, innocent victim. Such is the very essence of violent crime and it can be presumed that the Legislature was guided by this unfortunate fact when it established presumptive sentences for crimes which fall within the purview of the Fair Sentencing Act. *See State v. Blackwelder*, 309 N.C. 410, 306 S.E. 2d 783. We noted in *Blackwelder* that only where the particular vulnerability of the victim can be demonstrated is a trial judge permitted to consider this or similarly related facts in aggravation.

While we agree that James Higson, at the time of the attack, was in a disadvantaged position—that is, he was confined behind the steering wheel of his automobile and unable to fully defend himself—we do not consider this fact, standing alone, of sufficient import in determining this victim's particular vulnerability. Nor does the record support a conclusion that Patricia Higson, although attacked without warning, was made any more vulnerable than other victims similarly assaulted. While we consider it relevant that this victim was a woman, this fact alone will not support an aggravating factor bearing on a victim's particular vulnerability.

[5] Defendant contends that the trial court erred in finding as an additional factor in aggravation that there is no suitable or reliable supervision available for his condition. While defendant concedes that such a consideration might well be relevant in determining whether to suspend a prison sentence or impose an active one, he argues that the availability of suitable supervision should not be considered in determining whether to vary a sentence in excess of the presumptive under the Fair Sentencing Act. We agree.

It seems clear that the trial judge, in making this finding, was attempting to insure that the defendant, whom he found to be an extremely dangerous mentally ill person, be confined under supervision for a lengthy period of time. As noted earlier, a trial judge may properly consider a defendant's dangerousness to others as a factor in aggravation and impose a sentence in excess of the presumptive based thereon. One of the stated purposes of sentencing is "to protect the public by restraining offenders." G.S. § 15A-1340.3. *See State v. Ahearn,* 307 N.C. 584, 300 S.E. 2d 689. Here the defendant pled guilty to two serious offenses. The trial judge did find in mitigation that he suffered from a mental disorder which, although insufficient to constitute a defense, significantly reduced his culpability for the offense. The length of defendant's incarceration for these crimes must be determined on the basis of the trial judge's discretionary weighing of these and other properly found factors in aggravation and mitigation, together with any factor "reasonably related to the purposes at sentencing." G.S. § 15A-1340.4(a). The fact that there appeared to be no alternative to a lengthy incarceration for this defendant is neither relevant to the injury the offense has caused nor does it

relate to the particular culpability of the offender. G.S. § 15A-1340.3; *see State v. Ahearn*, 307 N.C. 584, 300 S.E. 2d 689. Alternatives to incarceration is a matter for legislative inquiry.

**[6]** Finally, we agree that the trial judge erred in failing to make separate findings in aggravation or mitigation as to each offense. In *State v. Ahearn*, 307 N.C. 584, 598, 300 S.E. 2d 689, 698, we stated:

> Separate findings as to the aggravating and mitigating factors for each offense will facilitate appellate review. Further, in the interest of judicial economy, separate treatment of offenses, even those consolidated for hearing, will offer our appellate courts the option of affirming judgment for one offense while remanding for resentencing only the offense in which error is found. This option is not available to us in the present case because error found on any aggravating factor applicable to only one offense will result in remand for resentencing on that offense, irrespective of whether the trial judge intended that the particular factor apply to one, the other, or both offenses. We therefore hold that in every case in which the sentencing judge is required to make findings in aggravation and mitigation to support a sentence which varies from the presumptive term, each offense, whether consolidated for hearing or not, must be treated separately, and separately supported by findings tailored to the individual offense and applicable only to that offense.

In the present case, however, the error is harmless inasmuch as the errors found in the aggravating factors apply equally to both offenses. Nevertheless, we once again caution trial judges that fairness and judicial economy dictate that, when sentencing a defendant for multiple offenses, separate findings are necessary for each offense.

Because the defendant is entitled to a new sentencing hearing for both offenses, it is unnecessary to address his final contention that the trial judge erred, through the exercise of his discretion, in imposing a sentence in excess of the presumptive term.

The cases are remanded to Superior Court, Pitt County, for resentencing.

82CRS3119—Remanded for resentencing.

82CRS3120—Remanded for resentencing.

Justice MITCHELL concurring in the result and dissenting in part.

I concur in the result reached by the majority. I also concur in all parts of the opinion of the majority except that part by which the majority holds that the trial court erred in finding in aggravation that the offenses committed by the defendant were especially heinous, atrocious or cruel. As to that part of the opinion of the majority, I dissent.

In my view the evidence before the trial court was sufficient to support the trial court's determination under the Fair Sentencing Act that as to each crime "the facts of the case disclose *excessive* brutality, or physical pain, psychological suffering, or dehumanizing aspects not normally present in that offense." *State v. Blackwelder*, 309 N.C. 410, 414, 306 S.E. 2d 783, 786 (1983). As the evidence was sufficient to support the trial court's determination in this regard, it is my view that this Court must accept that determination.

The record reveals that the defendant stabbed the victim, the defendant's brother, in plain view of the victim's wife and son. When the wife protested and tried to stop the defendant's murderous assault upon her husband, the defendant stabbed her in the abdomen causing her intestines to protrude in the presence of her son. The defendant then proceeded, after having been shot by the son, to pursue the son and attempt to stab him. The deadly tenacity exhibited by the defendant, together with his efforts to kill an entire family during this murderous course of conduct, were more than sufficient to show excessive brutality, physical pain, psychological suffering, or dehumanizing aspects not normally present *in cases of murder in the second degree.*

The evidence of the assault with intent to kill inflicting serious injury on the wife could be considered in determining whether the murder of the defendant's brother was especially heinous, atrocious or cruel when compared to other murders *in the second degree.* The fact that the defendant committed a deadly assault on the murder victim's wife and son during the course

of the murder in the second degree, was sufficient to disclose excessive brutality, physical pain, psychological suffering or dehumanizing aspects *not normally present in murder in the second degree.*

For similar reasons the assault with a deadly weapon with intent to kill inflicting serious injury upon the wife was especially heinous, atrocious or cruel. Surely it cannot seriously be argued· that the killing of an assault victim's husband and the attempt to kill her son did not disclose excessive brutality, psychological suffering and dehumanizing aspects not normally present *in assaults* such as that for which the defendant was convicted.

For these reasons, I believe the trial court properly found as a factor in aggravation that each of the crimes for which the defendant was convicted were especially heinous, atrocious or cruel. I dissent from the holding of the majority to the contrary. I concur in the remainder of the opinion of the majority and in the result of remanding both cases for resentencing.

Justice MARTIN joins in this opinion.