STATE OF NORTH CAROLINA v. GARY HANSFORD MILLER AND ALAN RAY HATTAWAY

No. 8428SC862

(Filed 4 June 1985)

1. **Criminal Law § 138— consolidated offenses—sentence exceeding total presumptive sentences—aggravating and mitigating factors not found separately**

    Resentencing was necessary where kidnapping offenses were consolidated with murder offenses for purposes of judgment, aggravating and mitigating

State v. Miller

factors were not found for the kidnapping offenses, and the trial judge im-
posed prison terms exceeding the total of the presumptive terms for each con-
solidated felony. G.S. 15A-1340.4.

**2. Criminal Law § 138— second-degree murder—heinous, atrocious, cruel—error**
    The trial judge erred in sentencing defendant for two counts of second-
degree murder by finding that the offense was especially heinous, atrocious or
cruel where the evidence tended to show that one victim was blindfolded and
told that he was going to walk through a fence and down an embankment, was
pushed through a fence and into a mine shaft, and was pulled up and pushed
back into the mine shaft after his foot caught on a root; the only evidence
presented as to the facts surrounding the other victim's death was that de-
fendant Hattaway had said that "he had to fight the son-of-a-bitch he put in
the mine a couple of weeks ago"; and the autopsy reports stated that both vic-
tims were alive at the time of impact and took one and a half or two breaths
before dying. The State failed to show by the preponderance of the evidence
excessive brutality, physical pain, or psychological suffering not normally pres-
ent in a second-degree murder.

    Judge WEBB dissenting.

    Judge BECTON concurring.

APPEAL by defendants from *Sitton, Judge*. Judgments en-
tered 10 February 1984 in Superior Court, BUNCOMBE County.
Heard in the Court of Appeals 12 March 1985.

    Defendants Miller and Hattaway were indicted for the first
degree kidnapping of Thomas Forrester, first degree kidnapping
of Betty Darlene Callahan, first degree murder of Forrester, first
degree kidnapping of Lonnie Marshall Gamboa, and first degree
murder of Gamboa. Defendants each pled guilty to three counts of
first degree kidnapping and two counts of second degree murder.

    At the sentencing hearing Asheville Police Officer Ross
Robinson testified for the State. On 12 December 1981 defendants
believed that Forrester had stolen defendant Hattaway's motorcy-
cle. They went to Jay Fagel's residence, threatened Fagel with a
gun, and asked him where they could find Forrester and the mo-
torcycle. Fagel, his nine year old son, the defendants and Danny
Roberts got into Roberts' van and went to the Intown Motel. In
Forrester's room, defendants questioned Forrester about the
motorcycle and money he owed defendant Hattaway on a drug
deal. Defendant Miller hit Forrester on the side of the head with
a gun. Defendants ransacked the room and strip-searched For-
rester and Callahan. Defendants put the motorcycle into the van,

and everyone got into the van. Defendant Miller drove the van to the Park Drive-In where Forrester, Callahan and defendants got into a car and drove to Paul Bare's residence. Callahan and Forrester were blindfolded and put in a pickup truck with defendant Miller and another man. While Callahan and defendant Miller stayed in the truck, Forrester was pushed down a mine shaft. Callahan was subsequently taken to Chicago, Illinois, where she was forced to work as a prostitute for a motorcycle gang.

On 23 December 1981 Jo Jo Vines and defendants met Gamboa and discussed a debt Gamboa owed defendant Miller. Vines and defendant Hattaway taped Gamboa's arms together, put him in the trunk of a car, and, with defendant Miller following in another car, they drove to Bare's residence and handcuffed Gamboa to a tree. Several hours later, defendants, Vines and Bare blindfolded Gamboa and took him to Ore Knob Mine. They told Gamboa that he was going to have to walk down an embankment. While defendant Miller and Bare held guns on Vines, Vines pushed Gamboa down a mine shaft.

The bodies of Gamboa and Forrester were recovered a month later. The autopsies revealed that they were alive at the time of impact and lived long enough to take one and a half or two breaths.

A statement by defendant Miller, taken by Sheriff Waddell in Ashe County, was read into evidence. Defendant Miller stated that Forrester was kidnapped and murdered because of money he owed a man from Tennessee, who was connected with the Dixie Mafia and who was present during the kidnapping and murder.

Both defendants presented evidence through several character witnesses as to their good reputation in the communities in which they lived.

The trial judge made the following findings in aggravation:

Defendant Miller (second degree murder of Forrester):

10. The offense was especially heinous, atrocious or cruel. The Court finds that the Defendant, acting in concert with another, precipitated and intended the killing of Thomas Forrester and aided and comprehended Thomas Forrester's death by means of being thrown or pushed while alive into a

mineshaft some 250 ft. deep and the offense was especially heinous, atrocious or cruel.

Additional written findings of factors in aggravation: The Court finds that the Defendant premeditated and deliberated the death of Tommy Forrester.

Defendant Miller (second degree murder of Gamboa):

1. The defendant induced others to participate in the commission of the offense.

10. The offense was especially heinous, atrocious or cruel. The Court finds that the Defendant, acting in concert with another, precipitated and intended the killing of Lonnie Gamboa and aided and comprehended Lonnie Gamboa's death by means of being thrown or pushed while alive into a mineshaft some 250 feet deep and the offense was especially heinous, atrocious or cruel.

13. The defendant was armed with a deadly weapon at the time of the crime.

19. The defendant committed the offense while on pretrial release on another felony charge.

26. The defendant has a prior conviction for criminal offenses punishable by more than 60 days' confinement.

Additional written findings of factors in aggravation: The Court finds that the Defendant premeditated and deliberated the death of Lonnie Gamboa.

Defendant Hattaway (second degree murder of Forrester):

10. The offense was especially heinous, atrocious or cruel. The Court finds that the Defendant, acting in concert with another, precipitated and intended the killing of Thomas Forrester and aided and comprehended Thomas Forrester's death by means of being thrown or pushed while alive into a mineshaft some 250 ft. deep and the offense was especially heinous, atrocious or cruel.

Additional written findings of factors in aggravation: The Court finds that the Defendant premeditated and deliberated the death of Tommy Forrester.

Defendant Hattaway (second degree murder of Gamboa):

10. The offense was especially heinous, atrocious or cruel. The Court finds that the Defendant, acting in concert with another, precipitated and intended the killing of Lonnie Gamboa and aided and comprehended Lonnie Gamboa's death by means of being thrown or pushed while alive into a mineshaft some 250 feet deep and the offense was especially heinous, atrocious or cruel.

Additional written findings of factors in aggravation: The Court finds that the Defendant premeditated and deliberated the death of Lonnie Gamboa.

The trial judge made numerous findings in mitigation, for both defendants, concluded that the factors in aggravation outweighed the factors in mitigation, and imposed two consecutive sentences of forty-five years for each defendant. Defendants appealed.

*Attorney General Edmisten by Assistant Attorney General Grayson G. Kelley for the State.*

*Public Defender J. Robert Hufstader for defendant-appellant Miller.*

*J. Stephen Gray for defendant-appellant Hattaway.*

PARKER, Judge.

[1] At the outset, we observe that the trial judge failed to make findings in aggravation and mitigation for the kidnapping offenses, which were consolidated with the murder offenses for purposes of judgment. Since the trial judge imposed prison terms which exceeded the total of the presumptive terms of each consolidated felony, the statutory aggravating and mitigating factors must be considered for each offense. G.S. 15A-1340.4. In *State v. Ahearn*, 307 N.C. 584, 598, 300 S.E. 2d 689, 698 (1983), our Supreme Court held that:

[I]n every case in which the sentencing judge is required to make findings in aggravation and mitigation to support a sentence which varies from the presumptive term, each offense, whether consolidated for hearing or not, must be treated separately, and separately supported by findings

tailored to the individual offense and applicable only to that offense.

On resentencing, which is necessary on account of the trial judge's failure to find aggravating and mitigating factors for the kidnapping offenses, and for the error discussed below, the trial judge must follow the guidelines set forth in *Ahearn* and G.S. 15A-1340.4.

[2] Both defendants argue that the trial court erred in finding, as a factor in aggravation, that the offense was especially heinous, atrocious or cruel. The trial judge found, for both defendants, that "the Defendant, acting in concert with another, precipitated and intended the killing of Lonnie Gamboa and aided and comprehended Lonnie Gamboa's death by means of being thrown or pushed while alive into a mineshaft some 250 feet deep and the offense was especially heinous, atrocious or cruel." The same finding was made as to both defendants for the killing of Forrester.

In *State v. Blackwelder*, 309 N.C. 410, 414, 306 S.E. 2d 783, 786 (1983), our Supreme Court held that in determining whether an offense was especially heinous, atrocious or cruel "the focus should be on whether the facts of the case disclose *excessive* brutality, or physical pain, psychological suffering, or dehumanizing aspects *not normally present in that offense*." In *Blackwelder* there was evidence of numerous bruises and cuts on the victim's body, and the victim had been shot twice. The first serious wound inflicted was a shotgun wound to the victim's back, the second shotgun wound was a close range shot to the victim's head. Bloodstains throughout the victim's trailer indicated that the victim was wounded and bleeding for some time before the fatal second shot. The close range shotgun wound blew the victim's head open; the court described the crime scene as "a ghoulish, bloody nightmare." The court observed that it was not inappropriate to measure the brutality of the crime by the extent of the physical mutilation of the victim's body. The excessive brutality of the murder, and the fact that the victim suffered for some time after the first shot, led the court to hold that the trial judge properly found as an aggravating factor that the murder was especially heinous, atrocious and cruel. For other recent murder cases where this aggravating factor has been held properly found, *see State v. Payne*, 311 N.C. 291, 316 S.E. 2d 64 (1984) (victim, who

was sixty-eight years old, was severely beaten and suffered extreme pain due to his extensive injuries for two and one half months before his death); and *State v. Watson*, 311 N.C. 252, 316 S.E. 2d 293 (1984) (victim, defendant's wife, was shot ten times and, before she died, she managed to move from room to room in the house leaving a trail of blood behind her).

In the instant case we find that the State failed to show by the preponderance of the evidence excessive brutality, physical pain or psychological suffering not normally present in a second degree murder. The State's evidence tended to show that Gamboa was blindfolded and told he was going to walk through a fence and down an embankment. Vines pushed Gamboa through the fence and into the mine shaft. Gamboa's foot caught on a root, Vines pulled Gamboa back up, and then pushed him back into the mine shaft. According to Asheville Police Officer Ross Robinson, the autopsy report stated that both Gamboa and Forrester were alive at time of impact and took one and a half or two breaths before dying. The only evidence presented as to the facts surrounding Forrester's death was Robinson's testimony that defendant Hattaway told Vines, after Vines pushed Gamboa into the mine shaft, that "he had to fight the son-of-a-bitch he put in the mine a couple of weeks ago." Presumably defendant Hattaway was referring to Forrester's death. This evidence fails to reach the standard set forth in *Blackwelder*, and the trial judge's finding that the murders were especially heinous, atrocious or cruel was improper.

Vacated and remanded for resentencing.

Judge WEBB dissents.

Judge BECTON concurs in the result.

Judge WEBB dissenting.

I dissent. As to each defendant the Court found aggravating and mitigating factors as to each murder charge. Each murder charge was then consolidated for sentencing with either one or two of the kidnapping charges to which the defendant had pled guilty. The sentence imposed in each case was within the statutory maximum for second degree murder. I believe the findings in

aggravation and mitigation were sufficiently tailored to the murder pleas pursuant to *State v. Ahearn*, 307 N.C. 584, 300 S.E. 2d 689 (1983) and there was no error as to the form of the findings.

I also believe the evidence was sufficient to find in each murder case that the offense was especially heinous, atrocious, or cruel. In each case the defendants abducted the victim at gunpoint, at which time they blindfolded and bound him. They then drove him to the scene of the murders. In the case of Gamboa he was tied to a tree in midwinter while the victims discussed his fate. Each victim was forced to walk into a mine to the edge of a mineshaft. Each was then pushed into the mineshaft and fell to his death. During the period between his abductions and death each victim was left to anticipate the time, place and manner of his death. I have no trouble concluding from this that such psychological torture is not normally present in a second degree murder case. *See State v. Blackwelder*, 309 N.C. 410, 306 S.E. 2d 783 (1983).

I vote to affirm.

Judge BECTON concurring.

I have no hesitancy in remanding these cases because of the trial court's failure to list separately the aggravating and mitigating factors for each offense as required by *State v. Ahearn*, 307 N.C. 584, 300 S.E. 2d 689 (1983). And although I am loathe to remand on the "especially heinous, atrocious or cruel" issue, I nevertheless do so based on my analysis of the relevant case law. *See State v. Ahearn; State v. Goodman*, 298 N.C. 1, 257 S.E. 2d 569 (1979); *State v. Thompson*, 66 N.C. App. 679, 312 S.E. 2d 212 (1984); and *State v. Medlin*, 62 N.C. App. 251, 302 S.E. 2d 483 (1983). These cases suggest that the Legislature, by using the word "especially," indicated that there must be evidence that the brutality involved exceeded that normally present in other murders or assaults.

Were we to hold otherwise, recognizing, of course, that every murder is arguably heinous, atrocious or cruel, trial courts could, by way of example, automatically apply the "especially heinous, atrocious or cruel" aggravating factor to every defendant who strangles or drowns a struggling victim. Similar results would befall defendants who threaten their victims, or discuss the vic-

tim's fate, before killing them. Whether such a result would be laudatory is not before us. The Legislature has certainly not so decreed.

The facts in *State v. Medlin* and *State v. Thompson* are particularly compelling. In *Medlin*, the defendant, after arguing with his girlfriend, the victim, who had been driven to her mother's home by another man,

> dragged the victim from the house, and into the yard, trying to convince her to leave with him. She resisted and defendant hit her in the eye, stated to her, 'If I can't have you, ain't nobody going to have you,' and shot her five times with a .22 caliber pistol. The victim then heard defendant tell her daughter, 'I have killed your mother.'
>
> . . . .
>
> As a result of the shooting, [the victim] sustained bullet wounds to the head, the ear, the neck, the chest, and the hand. . . . She was hospitalized for ten weeks and thought she might need future operations. At the time of the hearing, [the victim's] face remained partially paralyzed, she could not hear out of one ear. . . .

62 N.C. App. at 251-2, 302 S.E. 2d at 484. This Court remanded the case because it was not "persuaded that the evidence in this case [reflected] the requirement of 'excessive brutality,' beyond that normally present in any assault with a deadly weapon with intent to kill inflicting serious injury. . . ." *Id.* at 254, 302 S.E. 2d at 485.

In *State v. Thompson*, this Court, specifically distinguishing *State v. Blackwelder*, 309 N.C. 410, 306 S.E. 2d 783 (1983), remanded the case for resentencing even though the defendant twice told the victim prior to shooting him in the back that he, the defendant, intended to kill the victim.

Consistent with what I view to be the Legislative intent in drafting the "especially heinous, atrocious and cruel" language, I believe the trial court erred in finding, as a factor in aggravation, that the offenses were especially heinous, atrocious or cruel.