STATE OF NORTH CAROLINA v. GARY HANSFORD MILLER AND ALAN RAY HATTAWAY

No. 317A85

(Filed 2 April 1986)

1. **Criminal Law § 138.21— second degree murder—heinous, atrocious or cruel aggravating circumstance**

    The evidence was sufficient to show that the victims endured psychological and physical suffering beyond that normally present in a second degree murder so as to support the trial court's finding as an aggravating factor that the killings were especially heinous, atrocious or cruel where it tended to show: (1) defendants forced their way into the first victim's motel room, hit him on the head with a gun, strip searched him, and forced him to go with them to a drive-in; en route to this destination, one defendant pointed a gun at the victim and others in the vehicle, and the victim told his girl friend that he was a "dead man"; at the drive-in, defendants transferred the victim and his girl friend to a car and tied them up with a rope; they were then driven for about two hours to a garage in another county where the victim was blindfolded and gagged; the victim was then driven approximately five miles on a "bumpy" road, taken from the vehicle, walked through the woods to a mine shaft, and pushed into the 250-foot mine shaft after a struggle with his captors; and the victim lived briefly after receiving massive injuries from the fall in the shaft; and (2) defendants kidnapped the second victim, taped his hands and arms together, put him in the trunk of one defendant's car, and then drove for approximately two hours to another county; defendants handcuffed the victim to a tree in the woods in mid-winter for approximately four hours; the victim was later released from the tree and taken to a garage where he was forced to transfer marijuana to the second defendant; the victim was then blindfolded, driven to a mine, walked up a path, and pushed into the mine shaft; after getting caught on a tree root approximately ten feet down in the shaft, the victim was pulled out of the shaft and pushed in again; and the victim took one and one-half to two breaths after falling to the bottom of the shaft.

2. **Criminal Law § 138.14— cases consolidated for judgment—aggravating and mitigating factors—findings as to all offenses not necessary**

    When cases are consolidated for judgment and the trial judge finds aggravating and mitigating factors for the most serious offense for which defendant

*is being sentenced, defendant is not prejudiced by the judge's failure to make findings as to the lesser offenses consolidated so long as the sentence given does not exceed the maximum sentence permissible for the most serious offense. N.C.G.S. § 15A-1340.4(b).*

APPEAL by the State of North Carolina pursuant to N.C.G.S. § 7A-30(2) from a decision of a divided panel of the Court of Appeals, 74 N.C. App. 760, 330 S.E. 2d 71 (1985), vacating and remanding for resentencing judgments entered 10 February 1984 in Superior Court, BUNCOMBE County, by *Sitton, J.* Heard in the Supreme Court 21 November 1985.

*Lacy H. Thornburg, Attorney General, by Joan H. Byers, Assistant Attorney General, for the State-appellant.*

*J. Robert Hufstader, Public Defender for the Twenty-Eighth Judicial District, for defendant-appellee Gary Hansford Miller.*

*J. Stephen Gray, for defendant-appellee Alan Ray Hattaway.*

FRYE, Justice.

By this appeal, the State seeks reversal of the decision of the Court of Appeals granting defendants a new sentencing hearing. First, the State contends that the Court of Appeals erred in holding that the trial court incorrectly found as an aggravating factor that the killings were especially heinous, atrocious, or cruel. Secondly, the State argues that the Court of Appeals erred in holding that a trial judge must find separate aggravating and mitigating factors for each offense when cases are consolidated for judgment. Having carefully reviewed the Court of Appeals' opinion, the parties' arguments, and the relevant law, we reverse the Court of Appeals' ruling that defendants are entitled to a new sentencing hearing.

Defendants Miller and Hattaway were indicted for first degree kidnapping of Thomas Forrester, first degree kidnapping of Betty Darlene Callahan, first degree murder of Forrester, first degree kidnapping of Lonnie Marshall Gamboa, and first degree murder of Gamboa. Pursuant to a plea bargain agreement, each defendant entered pleas of guilty to two counts of second degree murder and three counts of first degree kidnapping. At the hearing to establish a factual basis for the pleas, the State presented the testimony of Ross Robert Robinson and William R. Buckner,

together with some fifty-three exhibits. The testimony estab-
lished that on 12 December 1981 defendants believed that Thomas
"Tommy" Forrester had stolen defendant Hattaway's motorcycle.
Defendants borrowed a van from Danny Roberts and went to the
residence of Jay Fagel seeking information as to Forrester's
whereabouts. Defendants, Fagel, and Fagel's nine-year-old son
went to the In Town Motel where Forrester was staying with his
girlfriend, Betty Darlene Callahan. Defendants forced their way
into Forrester's motel room and questioned Forrester about the
motorcycle and some money that Forrester owed Hattaway relat-
ing to a drug deal. Miller hit Forrester on the side of his head
with a pistol. Defendants ransacked the motel room and strip
searched Forrester and Callahan. The motorcycle was loaded into
the van, and defendants, Forrester, Callahan, Fagel and his son
left the motel.

Defendant Miller drove the van to the Park Drive-In in Ashe-
ville, while Hattaway sat in the front passenger seat pointing a
gun at Forrester, Callahan, and the Fagels. When they parked the
van at the drive-in, Miller got out and was gone briefly. During
this time, Forrester told Callahan that he was a "dead man."
Shortly thereafter, a car drove up beside the van and Callahan
and Forrester were transferred to this vehicle and tied up with a
rope.

Miller began to drive toward Newport, Tennessee. While at a
rest area, Hattaway stated to Miller, "I've changed my mind. I
want to take him to the other place." Callahan and Forrester
were then driven to a garage area on Paul Bare's property in
Ashe County. The ride from the drive-in to Newport, Tennessee,
then to Bare's property took about two hours. Both Forrester and
Callahan were gagged and blindfolded after they arrived at Bare's
garage. They were put in a pickup truck and driven approximate-
ly five miles on a "bumpy type road up into an area." Upon their
arrival at the planned destination, Forrester was taken from the
truck by Hattaway and an unidentified man while Miller re-
mained in the truck with Callahan. After some time had elapsed,
two people returned to the truck. The truck was driven back to
Bare's residence and Callahan's blindfold was removed. She was
subsequently taken to Chicago, Illinois, where she was forced to
work as a prostitute for a motorcycle gang.

In November 1981, there was a shoot-out at defendant Miller's house due to a dispute concerning drugs. Lonnie Marshall Gamboa was involved in this incident. There were arrests made and a preliminary hearing was held. On 23 December 1981, Gamboa met with Larry Smith, an attorney, at which time Gamboa obtained a copy of the transcript from the hearing and asked Smith to draft a deed conveying some of Gamboa's land to defendant Hattaway's father. Gamboa told Smith that he was obtaining the deed because Alan Hattaway was putting pressure on him.

Later that day, Jo Jo Vines, at the request of defendant Hattaway, picked up Gamboa and took him to a bar on Swannanoa River Road where they met Hattaway. Hattaway took the transcript that Gamboa had brought for him and said that he wanted to read it but not in the bar. Therefore, Gamboa, Vines and Hattaway got into Hattaway's car and drove to Sarge's Lounge where they met Miller. Miller got into the car and pointed a pistol at Gamboa. The other men in the car disarmed Gamboa, taped his hands and arms together, and put him in the trunk of the car. The men then drove to Paul Bare's residence in Ashe County, which is about a two-hour drive from Sarge's Lounge. Vines and Miller removed Gamboa from the trunk and handcuffed him to a tree in the woods. Gamboa remained in this position for approximately four hours. This incident occurred during mid-winter and Gamboa was lightly dressed.

When Bare and Miller finally released Gamboa from the tree, they took him to Bare's garage. Bare and Miller talked to Gamboa about paying a drug debt that he owed Miller and forced Gamboa to instruct his wife to transfer some marijuana to some of Miller's friends to help pay off the debt. After the call had been made, Miller and Bare told Gamboa that they were going to take him to see someone with whom he could make arrangements to pay the balance of the debt. Bare blindfolded Gamboa, and then Bare, Vines, Miller and Gamboa got into a truck and drove to Ore Knob Mine. Hattaway followed them in a car but stopped at the road leading to the mine to serve as a lookout. Vines took Gamboa inside the fenced-in area surrounding the mine shaft and, after receiving instructions from Bare and Miller, pushed Gamboa into the shaft. Because Gamboa got hung up on a tree root during the fall, Vines pulled him out and pushed him in again. The men

threw rocks in after Gamboa to make sure that he was not lodged anywhere in the mine shaft.

On 25 January 1982, the bodies of Thomas Forrester and Lonnie Marshall Gamboa were found at the bottom of the Ore Knob Mine. The autopsies revealed that both men died of massive blunt trauma but were alive at the time of impact on the floor of the shaft and had lived long enough to take one and a half or two breaths.

At the conclusion of the hearing, the court found that there was a factual basis for the entry of each plea, made other appropriate findings, and ordered the pleas recorded. Under the terms of the plea bargain, the two first degree kidnapping cases which led to the Forrester murder (kidnapping of Forrester and Callahan) were consolidated for judgment with the Forrester murder case, and the first degree kidnapping of Lonnie Marshall Gamboa was consolidated for judgment with the Gamboa murder case.

At the sentencing hearing, the State presented evidence of other crimes committed by defendant Miller and that defendant Miller was on pretrial release on a charge of possession with intent to sell and deliver a controlled substance at the time of the commission of these offenses. The State relied on the evidence presented at the previous hearing for whatever aggravating factors that evidence might prove as to defendant Hattaway. Defendant Miller presented ten character witnesses and defendant Hattaway twenty-six.

Following the sentencing hearing, the trial judge made specific findings of fact in aggravation and mitigation in each of the two murder cases. The court did not make separate findings in aggravation and mitigation as to the kidnapping cases which were consolidated for judgment with the murder cases. Among other factors found in aggravation, the court found that each killing was especially heinous, atrocious, or cruel. Both defendants excepted to this finding. The judge sentenced each of the defendants to two terms of forty-five years imprisonment to be served consecutively.

The Court of Appeals, in a divided opinion, held that the trial court erred by finding that the killings were especially heinous,

atrocious, or cruel and that the trial court erred by failing to make separate findings in aggravation and mitigation for each of the consolidated offenses. The judgments were thus vacated and the cases remanded for resentencing. 74 N.C. App. 760, 330 S.E. 2d 71. One judge dissented, believing that the evidence was sufficient to support the finding in each murder case that the offense was especially heinous, atrocious, or cruel, *State v. Blackwelder*, 309 N.C. 410, 306 S.E. 2d 783 (1983), and that "the findings in aggravation and mitigation were sufficiently tailored to the murder pleas pursuant to *State v. Ahearn*, 307 N.C. 584, 300 S.E. 2d 689 (1983) . . . ." *Id.* at 766-67, 330 S.E. 2d at 74, Webb, J., dissenting. For the reasons indicated hereinafter, we agree with the dissenting opinion.

I.

[1] The State argues that the Court of Appeals erred in holding that the trial judge incorrectly found as an aggravating factor that the killings were especially heinous, atrocious, or cruel. Defendants, on the other hand, contend that the facts in this case do not show excessive brutality, physical pain, psychological suffering, dehumanizing aspects or torture not normally present in second degree murder, and therefore the Court of Appeals was correct in reversing the decision of the trial court.

In *State v. Ahearn*, 307 N.C. 584, 300 S.E. 2d 689, this Court first considered how to interpret the Fair Sentencing Act's aggravating factor, especially heinous, atrocious, or cruel. We looked for guidance in interpreting this factor to the comparable aggravating factor in the Death Penalty Statute, N.C.G.S. § 15A-2000(e)(9). In *State v. Blackwelder*, 309 N.C. 410, 306 S.E. 2d 783, this Court clarified its holding in *Ahearn* as follows:

> While it is instructive to turn to our capital cases for a *definition* of an especially heinous, atrocious, or cruel offense, we decline to measure the facts of those capital cases against the facts of the cases decided under G.S. § 15A-1340.4(a)(1)f. Rather, the focus should be on whether the facts disclose *excessive* brutality, or physical pain, psychological suffering or dehumanizing aspects *not normally present in that offense.*

309 N.C. at 413-14, 306 S.E. 2d at 786. (Emphasis in original.)

In *Blackwelder*, 309 N.C. 410, 306 S.E. 2d 783, defendant was convicted of second degree murder. We held that the trial court did not err in finding that the murder was especially heinous, atrocious, or cruel where the record supported a conclusion that the victim was shot twice, that death was not immediate and that the victim suffered unnecessary physical pain prior to death. In discussing the facts shown by the report of the examining pathologist, this Court said that it was not "inappropriate in any case to measure the brutality of the crime by the extent of the physical mutilation of the body of the deceased or surviving victim." *Id.* at 415, 306 S.E. 2d at 787.

In *State v. Benbow*, 309 N.C. 538, 308 S.E. 2d 647 (1983), defendant entered a plea of guilty of second degree murder. The evidence disclosed that the victim was beaten with a stick, fracturing his skull in several places and driving the orb of one eye into the brain. We held that the evidence supported the trial court's finding that the beating was especially heinous, atrocious, or cruel.

In *State v. Payne*, 311 N.C. 291, 316 S.E. 2d 64 (1984), defendant's plea of guilty to second degree murder and sentence of life imprisonment were upheld notwithstanding defendant's contention that there was no mutilation of the victim's body and that the defendant did not intend to inflict blows sufficient to cause the victim's death. This Court noted that the victim was brutally beaten, kicked and "body slammed" into the floor, his injuries were extensive and he suffered continuous and extreme pain as a result. The trial court's finding that the murder was especially heinous, atrocious, or cruel was upheld.

In *State v. Brown*, 314 N.C. 588, 336 S.E. 2d 388 (1985), defendants also entered a plea of guilty to second degree murder. The evidence disclosed that the defendant led his unsuspecting victim into a room in which he was surprised by a codefendant brandishing a gun. The two defendants bound the victim's arms and legs together, tied him to a bedpost, forced a towel down his throat, robbed him and carried him to the basement and dumped him there. Defendants contended that the trial court erred in finding that the offense was especially heinous, atrocious, or cruel. This Court found sufficient evidence from which the sentencing judge could find that the victim suffered psychologically

and physically in a manner not normally present in second degree murders. Thus we held that the trial judge did not err in finding that the offenses were especially heinous, atrocious, or cruel.

We believe there is sufficient evidence in this case from which the trial judge could find that the victims suffered psychologically and physically in a manner not normally present in second degree murders. In the case of Thomas Forrester, defendants forced their way into his motel room, hit him on the side of his head with a gun and then strip searched him. Defendants forced Forrester to go with them to a drive-in in Asheville. En route to this destination, defendant Hattaway sat in the front seat of the van and pointed a gun at Forrester and others in the vehicle. Forrester, at one point during the journey, told his girlfriend that he was a "dead man."

At the drive-in, defendants transferred Forrester and Callahan to a car and tied them up with a rope. They were driven for about two hours to a garage in Ashe County. Forrester was blindfolded and gagged, and driven approximately five miles on a "bumpy" road. Forrester was taken from the vehicle, walked through the woods to the Ore Knob mine shaft, and pushed into the 250-foot mine shaft after a struggle with his captors. The autopsy report showed that Forrester lived briefly after receiving massive injuries from the fall. Those injuries included multiple abrasions on his body, multiple fractured ribs, severance of his right ear and tears to the left lung, left kidney and spleen.

In the case of Lonnie Marshall Gamboa, defendants kidnapped him, taped his hands and arms together, put him in the trunk of defendant Hattaway's car and then drove for approximately two hours to Ashe County. Gamboa was handcuffed to a tree in the woods in mid-winter for approximately four hours. The victim was later released from the tree and taken to a garage where he was forced to transfer some marijuana to defendant Miller. Then Gamboa was blindfolded, driven to Ore Knob Mine, walked up a path, and pushed into the mine shaft. After getting caught on a tree root approximately ten feet down in the shaft, he was pulled out of the shaft and pushed in again. The autopsy report showed that Gamboa, as did Forrester, took one and one-half to two breaths after falling to the bottom of the shaft.

The foregoing constitutes sufficient evidence for the trial judge to find that the victims in this case endured psychological and physical suffering beyond that normally present in a second degree murder. Therefore, the Court of Appeals erred in holding that the trial judge improperly found as an aggravating factor that the murders were especially heinous, atrocious, or cruel.

II.

[2] The State next contends that the Court of Appeals erred in holding that the trial court's failure to make separate findings of aggravating and mitigating factors as to the kidnapping convictions which were consolidated for judgment with the murder convictions was error. Defendants contend that the rule set forth in *State v. Ahearn*, 307 N.C. 584, 300 S.E. 2d 689, requires the trial judge to make findings of aggravating and mitigating factors for each of the offenses for which defendant was convicted, whether consolidated for hearing or judgment purposes. We disagree.

The applicable statute in this case is N.C.G.S. § 15A-1340.4(b) which provides that:

> (b) If the judge imposes a prison term for a felony that differs from the presumptive term provided in subsection (f) . . . the judge must specifically list in the record each matter in aggravation or mitigation that he finds proved by a preponderance of the evidence. If he imposes a prison term that exceeds the presumptive term, he must find that the factors in aggravation outweigh the factors in mitigation, and if he imposes a prison term that is less than the presumptive term, he must find that the factors in mitigation outweigh the factors in aggravation. However, a judge need not make any findings regarding aggravating and mitigating factors . . . if when two or more convictions are consolidated for judgment he imposes a prison term (i) that does not exceed the total of the presumptive terms for each felony so consolidated, (ii) that does not exceed the maximum term for the most serious felony so consolidated, and (iii) that is not shorter than the presumptive term for the most serious felony so consolidated.

Kidnapping in the first degree is a class D felony, punishable by a maximum prison term of forty years with a presumptive

term of twelve years. N.C.G.S. § 14-1.1(a)(4) (1981); N.C.G.S. § 15A-1340.4(f)(2) (1983). Murder in the second degree is a class C felony, punishable by a maximum prison term of fifty years or life with a presumptive term of fifteen years. N.C.G.S. § 14-1.1(a)(3) (1981); N.C.G.S. § 15A-1340.4(f)(1) (1983). Thus, the sentence of forty-five years imprisonment in the consolidated Forrester judgment exceeded by six years the total of the presumptive terms for the kidnapping of Callahan and Forrester (twelve years each) and the Forrester murder (fifteen years). Likewise, the sentence of forty-five years imprisonment in the consolidated Gamboa judgment exceeded by eighteen years the total of the presumptive terms (kidnapping — twelve years and second degree murder — fifteen years) for the two felonies so consolidated. Therefore, in order for the trial judge to sentence defendants to the forty-five year terms of imprisonment, it was necessary for him to "list in the record each matter in aggravation or mitigation that he finds proved by a preponderance of the evidence" and find that "the factors in aggravation outweigh the factors in mitigation . . . ." N.C.G.S. § 15A-1340.4(b) (1983). This the trial judge did in the second degree murder cases, clearly "the most serious felony so consolidated." Having done so, he could have sentenced defendants to a maximum prison term of fifty years or life. N.C.G.S. § 15A-1340.4(b); N.C.G.S. § 14-1.1(a)(3). Instead, he gave sentences of forty-five years imprisonment, well within the maximum terms permissible for class C felonies. Nevertheless, defendants contend that it was also necessary for the trial judge to make separate findings of aggravating and mitigating factors as to the kidnapping convictions which were consolidated for sentencing with the more serious murder convictions. They contend that the rule of *Ahearn* so requires.

This Court in *State v. Ahearn*, 307 N.C. 584, 300 S.E. 2d 689, discussed the necessity of appropriate findings as follows:

[I]n every case in which the sentencing judge is required to make findings in aggravation and mitigation to support a sentence which varies from the presumptive term, each offense, whether consolidated for *hearing* or not, must be treated separately, and separately supported by findings tailored to the individual offense and applicable only to that offense.

307 N.C. at 598, 300 S.E. 2d at 698 (emphasis added). *Ahearn* speaks to the necessity of separate findings where cases are consolidated for trial or hearing. It does not speak to the question of whether separate findings must be made where cases are consolidated for *judgment*, that is, two or more convictions but only one sentence. However, this Court has addressed this issue in at least two cases since *State v. Ahearn* was decided: *State v. Higson*, 310 N.C. 418, 312 S.E. 2d 437 (1984), and *State v. Parker*, 315 N.C. 249, 337 S.E. 2d 497 (1985).

In *State v. Higson*, 310 N.C. 418, 312 S.E. 2d 437, the defendant entered guilty pleas to charges of second degree murder of his brother and assault with a deadly weapon with intent to kill inflicting serious injury upon his sister-in-law. The cases were consolidated for judgment and defendant was sentenced to a term of life imprisonment, the maximum sentence for second degree murder. The trial judge made a single set of findings in aggravation and mitigation. This Court found errors in some of the findings. Defendant contended that the trial court also erred in failing to make separate findings in aggravation and mitigation as to each offense. This Court, in an opinion by Justice Meyer (Justices Mitchell and Martin dissenting as to the holding that the trial court erred in finding that the offenses were especially heinous, atrocious, or cruel), agreed with the defendant. After quoting from *State v. Ahearn*, 307 N.C. 584, 300 S.E. 2d 689, the Court said that in the present case "the error is harmless inasmuch as the errors found in the aggravating factors apply equally to both offenses." *Higson*, 310 N.C. at 426, 312 S.E. 2d at 442. Nevertheless, the Court said "we once again caution trial judges that fairness and judicial economy dictate that when sentencing a defendant for multiple offenses, separate findings are necessary for each offense." *Id.* We note that the quote from *Ahearn* in *Higson* referred to cases consolidated for hearing and makes no reference to cases consolidated for judgment.

In a more recent sentencing case, we stated in *State v. Parker*, 315 N.C. 249, 257, 337 S.E. 2d 497, 501, that "each offense, even if consolidated for trial or hearing with another, must, *unless consolidated also for judgment*, be treated separately at sentencing in determining which aggravating and mitigating circumstances pertain to which offenses." (Emphasis added.) This decision would require a judge to make findings of aggravating

and mitigating factors for each offense in cases consolidated for trial or *hearing*, but not in cases consolidated for *judgment*. We believe this to be the better rule. When cases are consolidated for judgment and the trial judge finds aggravating and mitigating factors as to the most serious offense, but fails to make such findings as to the lesser offenses consolidated, the defendant is not prejudiced so long as the sentence given does not exceed the maximum sentence permissible for the most serious offense.

While the statute permits a sentence equal to the combined presumptive sentences for the offenses consolidated, N.C.G.S. § 15A-1340.4(b), it does not permit a sentence equal to the combined maximum sentences for the consolidated offenses. Rather, the total sentence is limited by the maximum sentence for the most serious offense in the consolidated judgment. This is the very purpose of consolidation for sentencing purposes and works to the benefit of the defendant by limiting the maximum sentence that he can receive for all of the convictions so consolidated. Here, pursuant to the plea bargain, the kidnapping and second degree murder convictions were consolidated for judgment, thus insuring the defendants only one sentence for two convictions with a maximum prison sentence of fifty years or life. Without the consolidation, defendants could have been sentenced to the maximum prison sentences of fifty years or life for the second degree murders in addition to at least the presumptive terms of twelve years for the first degree kidnapping convictions. Having received the benefits of their plea bargains by having their convictions consolidated for sentencing, they are not entitled to an additional benefit of separate findings as to the lesser offenses so consolidated.

For the reasons stated hereinabove, we hold that when cases are consolidated for *judgment*, and the judge makes findings of aggravating and mitigating factors for the most serious offense for which defendant is being sentenced, the judge's failure to make findings of such factors for the lesser offenses consolidated will not constitute reversible error. The decision of the Court of Appeals is reversed.

Reversed.